## Salem

IRMA EPPLING

v.

## SCHULTZ DINING PROGRAMS/COMMONWEALTH OF VIRGINIA

No. 0576-93-3

Decided March 29, 1994

COUNSEL

Berrell F. Shrader (Attorneys and Counselors at Law of Virginia, P.C., on brief), for appellant.

Patricia H. Quillen, Assistant Attorney General (Stephen D. Rosenthal, Attorney General; Gail Starling Marshall, Deputy Attorney General; William H. Hauser, Senior Assistant Attorney General; James P. Wheeler, Assistant Attorney General, on brief), for appellee.

OPINION

**COLEMAN, J.**—In this workers' compensation appeal, the dispositive question is whether an employee's termination from employer procured selective employment permanently bars the employee from having her workers' compensation benefits reinstated, when the reason for her termination was excessive absenteeism caused by non-work-related health problems. We find that the commission erred in permanently terminating Irma Eppling's workers' compensation benefits. The commission appears to have reached this erroneous result by misapplying our decision in *Chesapeake & Potomac Telephone Co. v. Murphy*, 12 Va. App. 633, 406 S.E.2d 190, *aff'd en banc*, 13 Va. App. 304, 411 S.E.2d 444 (1991), and the Supreme Court's decision in *American Furniture Co. v. Doane*, 230 Va. 39, 334 S.E.2d 548 (1985).

We hold that Eppling's inability to attend satisfactorily to her selective employment job due to unrelated health problems, the conduct that led to her discharge, was equivalent to an unjustified refusal of selective employment for purposes of the Act. A partially disabled employee's inability to perform selective employment satisfactorily warrants a suspension of compensation benefits until such time as the worker cures the situation by proving that the health problems have resolved to the point that the worker can perform selective employment satisfactorily and has made a reasonable effort to market his or her residual work capacity. Accordingly, we reverse and remand the case for the commission to consider Eppling's application to reinstate her award of benefits based on a change in condition. The commission must decide whether Eppling proved that she has cured the reason for her suspension by showing that her unrelated health problems have resolved to enable her to return to the labor market and proved that she has made reasonable but unsuccessful efforts to market her residual work capacity.

I.

In 1989, Irma Eppling suffered a work-related injury, which her employer, the Commonwealth of Virginia, accepted as compensable. In 1992, the Commonwealth procured light-duty work for Eppling with another employer. Her treating physician, Dr. Marc Siegel, reported that she had recovered from her work-related injuries to the point that she could return to light-duty work, and he

approved her being able to perform the job that the Commonwealth procured insofar as her work-related injury was concerned.

Eppling accepted the light-duty work. She worked in the position for approximately one month until she was discharged for excessive absenteeism caused by non-work-related health problems. Eppling missed thirteen out of twenty-six work days due to illness, seizures, and injuries from an automobile accident, all unrelated to her compensable injuries. The deputy commissioner found that Eppling "failed to report for work half of the time because of physical conditions unrelated to the subject injury." The commission found that she "clearly had no control over th[e] disability" which caused the absenteeism. The commission ruled, nevertheless, that because the employer terminated Eppling for "cause," she was permanently barred from receiving her compensation benefits.

## II.

When a disabled employee is discharged from selective employment, the "inquiry focuses on whether the claimant's benefits may continue in light of [her] dismissal." *Richmond Cold Storage Co. v. Burton*, 1 Va. App. 106, 111, 335 S.E.2d 847, 850 (1985). An employee's workers' compensation benefits will be permanently forfeited only when the employee's dismissal is "justified," the same as any other employee who forfeits her employment benefits when discharged for a "justified" reason. *Id.*

A "justified" discharge (one which warrants forever barring reinstatement of workers' compensation benefits) does not simply mean that the employer can identify or assign a reason attributable to the employee as the cause for his or her being discharged. Whether the reason for the discharge is for "cause," *see Murphy*, 12 Va. App. at 639, 406 S.E.2d at 193, or is "justified" for purposes of forfeiting benefits must be determined in the context of the purpose of the Act and whether the conduct is of such a nature that it warrants a permanent forfeiture of those rights and benefits. "[T]he Commission . . . must be mindful of the purposes and goals of the" Act. *Burton*, 1 Va. App. at 111, 335 S.E.2d at 850.

We base our holding in part on cases which have held that an employee's conduct "justified" or constituted "cause" for dismissal

of the type that warrants permanent forfeiture of compensation benefits. In *Marval Poultry Co. v. Johnson*, 224 Va. 597, 598, 299 S.E.2d 343, 344 (1983), a disabled employee on selective work status was no longer entitled to workers' compensation benefits when "he [was] discharged by his employer for dishonesty." Similarly, the Court held that a partially disabled employee's rights to compensation benefits were permanently terminated when the employee was discharged because he had been "an exceedingly poor worker during the entire period of his employment . . . he had a great number of absences from work, and . . . several times he left his job without authorization." *Goodyear Tire & Rubber Co. v. Watson*, 219 Va. 830, 833, 252 S.E.2d 310, 313 (1979). This Court held in *Murphy*, 12 Va. App. at 639, 406 S.E.2d at 193, that the employee's conduct constituted "cause" for discharge sufficient to justify a forfeiture of benefits where he was guilty of fraudulent misrepresentations in his attempt to obtain compensation benefits.

From our review of the commission's holding in Eppling's case, it appears that the commission has seized upon language from our holding in *Murphy* that a termination for "cause" justifies permanently barring an employee's compensation benefits. In doing so, the commission has failed to consider the nature of Murphy's conduct, which constituted "cause" or "justified" the dismissal so as to work a forfeiture in *Murphy*, or of the workers in the foregoing line of cases decided by our Supreme Court and which lead up to *Murphy*. Furthermore, the commission chose not to heed the directive that in order to work a forfeiture, the "wage loss [must be] properly attributable to [the employee's] wrongful act . . . [for which t]he employee is responsible." *Id.* at 639-40, 406 S.E.2d at 193.

Although Eppling's employer had "cause" for terminating her selective employment due to excessive absenteeism, her absences were due to health problems and not due to "wrongful act[s]" that "justified" her dismissal so as to permanently deprive Eppling of having her workers' compensation benefits reinstated. In *Timbrook v. O'Sullivan Corp.*, 17 Va. App. 594, 598, 439 S.E.2d 873, 876 (1994), this Court held that the *Murphy* forfeiture rule does not apply to an employee who was discharged for failing to notify her employer that she would be absent from selective employment that she had refused. Because the employee had

refused, or not accepted, the employer's offer of selective employment, her termination following three consecutive absences was "not for cause or for misconduct, as in *Murphy*, [which would] justif[y] a forfeiture of her compensation benefits that could never be cured." *Id.* Similarly, excessive absenteeism caused by a non-work-related injury beyond the employee's control is not the type of willful conduct or misbehavior that, upon termination, justifies a forfeiture of workers' compensation benefits.

■ The fact that Eppling's dismissal does not work a forfeiture of benefits does not of itself entitle her to have the benefits reinstated. Eppling's non-work-related disability, a cause totally unrelated to her industrial injury, prevented her from being able to attend satisfactorily to the selective employment that her employer had secured for her. Excessive absences due to unrelated health problems were the reason that Eppling was discharged. When a non-work-related disability prevents a partially disabled employee from returning to his or her pre-injury work or from accepting selective employment, for purposes of the Act, the unrelated disability is not justification for the employee to refuse or not to perform selective employment or fail to market his or her residual work capacity. *Doane*, 230 Va. at 42-43, 334 S.E.2d at 550-51. Thus, the inability of a disabled employee to do selective work or to market his or her residual capacity due to an unrelated disability is equivalent to an unjustified refusal of selective employment. *Id.* at 43, 334 S.E.2d at 550-51. *See* Code § 65.2-510.

■ The rationale behind this principle is that when an employee's work-related disability has resolved itself to the point that the worker can return to gainful employment, he or she is required to do so. An employer is not responsible for a disabled employee who is no longer unable to return to gainful employment because of his or her work-related injuries, but is prevented from doing so for other reasons. *See Doane*, 230 Va. at 42-43, 334 S.E.2d at 550-51. We see no distinction between a worker who refuses selective employment due to unrelated health problems and one who is unable to attend satisfactorily to his or her selective employment due to unrelated health problems, and who is discharged as a consequence. We hold that the latter is equivalent to an unjustified refusal of selective employment which warrants suspension of benefits pursuant to Code § 65.2-510. Although Eppling's benefits had been terminated when she accepted the of-

fer of selective employment, in order to have her benefits reinstated, she must demonstrate that her situation has changed and that she has "cured" her inability to attend satisfactorily to selective employment.

Having erroneously decided that Eppling was forever barred from having her compensation benefits reinstated, the commission did not consider whether her condition had changed such that she could satisfactorily attend to and perform selective employment. Consequently, the commission did not decide whether Eppling was required or had reasonably attempted to market any residual work capacity. Accordingly, we reverse the commission's decision and remand the claim for further consideration consistent with the views stated in this opinion.

*Reversed and remanded.*

Moon, C.J., and Willis, J., concurred.