457 S.E.2d 790

**LEADBETTER, INC. and Pennsylvania Manufacturers Indemnity Insurance Company**

v.

**Benjamin PENKALSKI.**

**Record No. 1457–94–2.**

Court of Appeals of Virginia,
Richmond.

June 6, 1995.

Benton, J., filed dissenting opinion.

S. Vernon Priddy, III, Richmond (Jennifer G. Marwitz, Sands, Anderson, Marks & Miller, on brief), for appellants.

Malcolm Parks, III, Richmond (Susan Elaine Sieger, Maloney, Yeatts & Barr, on brief), for appellee.

Present: BENTON, J., and COLE and HODGES, Senior Judges.

HODGES, Senior Judge.

Leadbetter, Inc. and its insurer (hereinafter collectively referred to as "employer") appeal a decision of the Workers' Compensation Commission awarding temporary total disability benefits to Benjamin Penkalski (claimant). Employer contends that the commission erred in finding that (1) *American Furniture Co. v. Doane*, 230 Va. 39, 334 S.E.2d 548 (1985), does not control this case; (2) the "two causes" rule applies to this case and requires reinstatement of temporary total disability benefits; (3) the claimant's work-related ankle injuries, in part, caused his inability to continue performing the light duty job he had been performing until his December 11, 1992 heart attack; (4) any amount of the claimant's partial disability attributable to his compensable ankle injuries was sufficient to support reinstatement of temporary total disability benefits; (5) a portion of the claimant's loss of earning capacity after December 11, 1992 was attributable to his compensable ankle injuries; and (6) the claimant had no residual work capacity after his heart attack, and therefore he had no obligation to

market his residual work capacity. For the reasons stated below, we find that the Supreme Court's holding in *Doane* controls this case, and that the "two causes" rule does not apply. Accordingly, we reverse the commission's decision.

## BACKGROUND

*Stipulations of the Parties:*

On April 9, 1991, the claimant sustained compensable injuries to both ankles while working for employer. The claimant received temporary total disability benefits as a result of those compensable injuries. On May 18, 1992, the commission entered an award providing the claimant with permanent partial disability benefits to compensate him for thirty percent permanent partial loss of function to his left leg and twenty percent permanent partial loss of function to his right leg. The claimant's entitlement to permanent partial disability benefits ended on September 30, 1993. He did not receive any additional disability benefits from employer after September 30, 1993. At all times since April 9, 1991, the claimant was restricted from performing his regular pre-injury work. However, the claimant was permitted by his treating physician, Dr. E. Claiborne Irby, an orthopedic surgeon, to resume light-duty selective employment within his limitations. Employer provided the claimant with light-duty work consistent with his limitations. As of December 10, 1992, the claimant was performing light duty work for employer. On December 11, 1992, the claimant suffered a heart attack. As a result of the heart attack, the claimant developed ischemia of his feet. The claimant lost additional function of his feet as a consequence of the ischemia. The heart attack, ischemia, and resulting treatment were not caused by the claimant's compensable April 9, 1991 accident, and are not work-related.

*Medical Records:*

Dr. Irby released the claimant to return to restricted work in May 1992. On May 27, 1993, Dr. Irby wrote that the claimant had problems unrelated to his April 9, 1991 accident and problems directly related to his April 9, 1991 accident. Dr. Irby concluded that the claimant was disabled from per-

forming any work that required prolonged standing and walking. On June 11, 1993, Dr. Irby clarified his opinion by writing that "[the claimant's] disability has two causes, one which is work-related and one which is not." On September 9, 1993, Dr. Irby wrote that, after taking into account the claimant's ankle injuries, his heart problems, and ischemia, he was totally disabled from any future employment. Dr. Irby stated that "the ankle part is ... based on my following the patient" and "the cardiac and ischemic foot disability [is based] on Dr. John T. Funai's report...."

On September 3, 1993, Dr. Funai, a cardiologist, wrote that the claimant developed severe ischemia of the foot as a result of his heart attack, threatening the loss of his foot. Dr. Funai reported that prolonged rest and intensive medical therapy had stabilized the condition. However, Dr. Funai stated that the possibility of future deterioration of the claimant's cardiac condition and foot condition was unclear. Therefore, Dr. Funai opined that "the combination of [the claimant's] cardiac condition and the potential loss of a foot prohibits any future employment."

*Claimant's Testimony:*

The claimant testified that in September 1991, employer made selective employment available to him consistent with his restrictions. He stated that he performed this work until he had his heart attack, and that, before the heart attack, he was "getting stronger all the time." He testified that, before the heart attack, he had been doing exercises that resulted in significant improvement in the condition of his ankles. After the heart attack, the claimant was not able to do the ankle exercises until November 1993. He stated that the ability to move his feet had worsened since December 11, 1992, and that both ankles were stiff and swollen. The claimant agreed that, as far as he knew, the light-duty employment provided to him by employer would have continued but for his heart attack.

*Proceedings:*

On September 10, 1993, the claimant filed an application alleging a change in condition causally related to the April 1,

1991 compensable accident. He sought temporary total disability benefits for the period beginning October 1, 1993 and continuing. The employer defended the application on the ground that the claimant's inability to perform light-duty work was caused by his heart attack and its sequelae, which were unrelated to the compensable accident, and that claimant's condition was tantamount to an unjustified refusal of selective employment. The employer also contended that, at most, the claimant was partially disabled, and that he failed to market his residual work capacity.

The deputy commissioner awarded temporary total disability benefits to the claimant on the basis that Dr. Irby's opinion brought the case within the "two causes" rule. The full commission affirmed, finding that *Doane* did not apply. The commission's holding was based upon a finding that the claimant was unable to continue with light-duty work provided by employer, both because of the industrial injury and because of the non-work-related heart attack. The commission found that the medical evidence showed that the claimant was totally disabled because of the heart attack and its sequelae, as well as the industrial injury. In *Doane,* the claimant was unable to continue with light-duty work solely because of a non-work-related disability. The commission further found that the claimant had no obligation to market his residual work capacity because these conditions rendered him totally disabled. In her concurring opinion, Commissioner Diamond found that *Doane* was inapplicable, because the medical evidence proved that the claimant's work-related condition was exacerbated by a non-work-related cause. In his dissenting opinion, Commissioner Tarr stated that he did not believe that the claimant was entitled to an award of temporary total benefits because he was in the same position as the claimant in *Doane.*

## ANALYSIS

This appeal does not present a case of conflicting evidence or a dispute concerning the commission's findings of fact.

When the issue is the sufficiency of the evidence and there is no conflict in the evidence, the issue is purely a question of law. This Court is not bound by the legal determinations made by the commission. "[W]e must inquire to determine if the correct legal conclusion has been reached."

*Cibula v. Allied Fibers & Plastics*, 14 Va.App. 319, 324, 416 S.E.2d 708, 711 (1992) (quoting *City of Norfolk v. Bennett*, 205 Va. 877, 880, 140 S.E.2d 655, 657 (1965) (other citations omitted)), *aff'd*, 245 Va. 337, 428 S.E.2d 905 (1993).

Here, there is no conflict in the evidence. Therefore, we must determine if the correct legal conclusion has been reached by the commission.

*Applicability of Doane:*

■ Claimant bore the burden of proving that he sustained a change in his capacity to work and that such change was due to a condition causally connected with his compensable injury. *AMP, Inc. v. Ruebush*, 10 Va.App. 270, 273–74, 391 S.E.2d 879, 881 (1990). In *Eppling v. Schultz Dining Programs/Commonwealth*, we stated as follows:

[W]hen a non-work-related disability prevents a partially disabled employee from returning to his or her pre-injury work or from accepting selective employment, for purposes of the Act, the unrelated disability is not justification for the employee to refuse or not to perform selective employment or to fail to market his or her residual work capacity. Thus, the inability of a disabled employee to do selective work or to market his or her residual capacity due to an unrelated disability is equivalent to an unjustified refusal of selective employment.

18 Va.App. 125, 130, 442 S.E.2d 219, 222 (1994) (citing *Doane*, 230 Va. at 42–43, 334 S.E.2d at 550–51, and Code § 65.2–510).

The facts of this case place it squarely within the Supreme Court's holding in *Doane*. In *Doane*, a partially disabled employee was precluded from performing selective employment because of an arm impairment causally unrelated to her compensable back injury. The Supreme Court held that "[a]n

employer is ... absolved of liability for compensation if the employee refuses selective employment because of a physical condition unrelated to the original industrial accident and arising since the accident." *Doane*, 230 Va. at 43, 334 S.E.2d at 550.

Here, even though the claimant was partially disabled because of his ankle condition prior to suffering his heart attack, he was able to perform selective employment. After his heart attack, the claimant was precluded from performing selective employment. The claimant stipulated that the heart attack and ischemia were not work-related nor were they related to his compensable ankle injuries. In addition, he stipulated that his additional loss of foot function was caused by the ischemia.

Dr. Funai attributed claimant's total disability to his heart attack and ischemia. Dr. Funai made no mention of the claimant's compensable ankle injuries when rendering his opinion. Dr. Irby did not state that the heart attack and its sequelae exacerbated the claimant's ankle injuries, thereby precluding him from performing selective employment. Dr. Irby merely stated that a portion of claimant's disability was work-related and a portion of his disability was not work-related. However, Dr. Irby did not opine that claimant's inability to return to selective employment after his heart attack was caused by claimant's compensable ankle injuries or by an exacerbation of those injuries.

Based upon this record, we find that the commission erroneously concluded that the physicians reported that the claimant was totally disabled because of the heart attack and its sequelae, as well as the industrial accident. No medical evidence proved that the claimant's heart attack and its sequelae aggravated or exacerbated his ankle condition, resulting in disability which precluded him from returning to selective employment. In order to have been entitled to an award of temporary total disability benefits, the claimant was required to prove a causal connection between his heart attack and its sequelae and his compensable ankle injuries. The claimant failed to meet this burden. Thus, the claimant's non-work-

related heart condition and ischemia did not relieve him of his obligation to perform selective employment or market his residual work capacity. *See Eppling,* 18 Va.App. at 130, 442 S.E.2d at 222.

*Applicability of "Two Causes" Rule:*

The " 'two causes' rule 'refers to the case where *a disability* has two causes: one related to the employment and one unrelated.' " *Smith v. Fieldcrest Mills, Inc.,* 224 Va. 24, 28, 294 S.E.2d 805, 808 (1982) (citation omitted) (emphasis added). In such a case, benefits are allowed "when it is shown that 'the employment is a contributing factor to the disability.' " *Id.* at 28–29, 294 S.E.2d at 808 (citation omitted).

In order for the "two causes" rule to apply in this case, the claimant was required to present evidence that, after his heart attack, his ankle condition prevented him from returning to selective employment, and that the disability due to his ankle condition had two causes, one work-related and one non-work-related. The medical evidence did not establish that the claimant's ankle condition resulted in disability that was caused in part by the compensable accident and in part by the heart attack and its sequelae, and that this disability precluded him from returning to selective employment. Dr. Irby opined that the claimant was totally disabled because of his ankle injuries, heart condition, and ischemia. However, he did not opine that the claimant's ankle condition resulted in total disability that had two causes, one work-related and one not work-related, and that this disability prevented the claimant from returning to selective employment. Therefore, the commission erroneously applied the "two causes" rule as a basis for awarding temporary total disability benefits to the claimant.

Because our holdings on these points dispose of this appeal, we will not address any remaining issues raised by employer in its brief.

We reverse the commission's award and remand the case for entry of an appropriate order, consistent with the views

expressed in this opinion, suspending the claimant's compensation benefits.

*Reversed and remanded.*

BENTON, Judge, dissenting.

An employee is entitled to recover compensation for an aggravation or exacerbation of a compensable injury by accident even when the event that caused the aggravation or exacerbation did not involve the workplace. *See* 1 Arthur Larson, *Workmen's Compensation Law,* §§ 13.00–13.24 (1994). *See also Wilson v. Workers' Compensation Com'r,* 174 W.Va. 611, 328 S.E.2d 485, 489 (W.Va.1984). "It is well established that where ... the chain of causation from the original industrial injury to the condition for which compensation is sought is direct, and not interrupted by any intervening cause attributable to the claimant's own intentional conduct, then the subsequent [condition] should be compensable." *American Smelting and Refining Co. v. Industrial Comm'n,* 25 Ariz.App. 532, 544 P.2d 1133, 1135 (1976). *See also Department of Highways v. McCoy,* 301 Ky. 765, 193 S.W.2d 410 (1946) (an employee who suffered a work-related hernia was entitled to receive compensation for an aggravation of the hernia caused by the inability to operate due to a subsequently developed unrelated onset of tuberculosis). Recovery of compensation for a subsequent aggravation is barred only if the subsequent aggravation "is the result of an independent intervening cause attributable to claimant's own intentional conduct." 1 *Larson, supra,* at § 13.00. Numerous courts have recognized this principle with factual variations "but as long as the causal connection is in fact present the compensability of the subsequent condition is beyond question." *Id.* at § 13.11(b) (footnote omitted).

Furthermore, another well established principle holds that "where a disability has two causes: one related to the employment and one unrelated [to the employment] ... full benefits will be allowed." *Bergmann v. L & W Drywall,* 222 Va. 30, 32, 278 S.E.2d 801, 803 (1981). This principle requires the

commission to award compensation because "the employment is a contributing factor to the disability." *Id.; see also Smith v. Fieldcrest Mills, Inc.*, 224 Va. 24, 28–29, 294 S.E.2d 805, 807–08 (1982). These two principles intersect in this case and mandate an affirmance of the commission's decision.

The evidence in this case proved that Penkalski suffered a compensable work-related injury when he fell and broke both ankles. Dr. Irby's reports document that Penkalski suffered chronic pain and swelling after he broke his ankles. After Penkalski had begun to make progress and was walking, Dr. Irby ordered him to begin exercising his ankles. His injury was diagnosed, however, by Dr. Irby to be a permanent partial disability.

During the period of his disability, Penkalski suffered a heart attack unrelated to his work. When Penkalski was being treated for his heart problem, a physician who was operating on him caused arterial plaque to be loosened. The plaque settled in Penkalski's feet and caused injury to his toes and feet. As a result of the injuries the plaque caused to his feet, Penkalski was unable to perform exercises that Dr. Irby prescribed for his ankles.

Dr. Irby reported that these complications from the heart operation caused Penkalski to suffer foot and toe problems. The severity of those problems prevented Penkalski from exercising his ankles and resulted in a marked decrease in his ankle motion. Thus, Penkalski's ankle condition deteriorated and further increased his disability. As a consequence, Dr. Irby barred him from "doing any job where he has to do prolonged standing or walking due to his ankles." Dr. Irby reported that Penkalski was totally disabled as a result of his work-related injury and the exacerbation of that injury. Based upon Dr. Irby's reports, the commission found that Penkalski's work-related ankle disability was exacerbated by and was worsened as a result of the effect of the foot ischemia.

The majority's decision disregards Dr. Irby's medical opinions (1) that Penkalski's work-related disability was exacerbated by the complications that flowed from Penkalski's heart

condition, and (2) that Penkalski's current disability has two causes. The commission based its opinion upon its acceptance of Dr. Irby's medical opinions. When a commission's opinion is based upon the results of a medical diagnosis, that resolution is a factual finding based on credible evidence that binds this Court. *See Rose v. Red's Hitch & Trailer Serv., Inc.,* 11 Va.App. 55, 60, 396 S.E.2d 392, 395 (1990).

*American Furniture Co. v. Doane,* 230 Va. 39, 334 S.E.2d 548 (1985), has no bearing on the facts in this case. In *Doane,* the employee suffered a work-related injury to her back. After the employee had surgery and recovered, the attending physician released the employee to return to light duty work. *Id.* at 41, 334 S.E.2d at 549–50. The employee failed to report for light duty work because of impairments to her hand and arm that were "unrelated" to the back injury. *Id.* The two conditions were "unrelated" because they neither flowed from the same work-related cause nor resulted in disability to the same body member. Thus, the Court held that "Doane failed to carry her burden of persuasion to show the necessary causal connection between her arm impairment and her compensable injury." *Id.* at 43, 334 S.E.2d at 550–51.

In *Eppling v. Schultz Dining Programs,* 18 Va.App. 125, 442 S.E.2d 219 (1994), this Court applied *Doane* in a case where an employee was terminated because of excessive absences caused by health problems that were "unrelated" to her work-related injury. *Id.* at 128, 442 S.E.2d at 221. No evidence in that case proved that Eppling's "unrelated" problem had exacerbated or aggravated the work-related injury.

Dr. Irby's report clearly states the relationship between the result of the heart complication and the work-related injury. Thus, the commission had a medical basis upon which to conclude that as a result of Penkalski's heart attack, Penkalski was unable to continue his exercises and lost further motion in his injured ankles. Dr. Irby's report stated that Penkalski was "disabled from any work that requires prolonged standing and walking." He further reported that the disability resulted from two causes, "one is work-related and one is not." In

addition, the commission specifically quoted from Dr. Irby's May 27, 1993, report in finding that Penkalski had proved that the non-work-related condition contributed to and aggravated his compensable injury.

When, as in this case, the medical evidence proved that the work-related disability was aggravated or exacerbated by the non-work-related problem, the resulting disability is compensable. Furthermore, Dr. Irby's medical opinion established that Penkalski's inability to perform sustained standing and walking was a disability that had two causes. One cause was the worsening condition of Penkalski's ankles, the work-related injury. Because the record contains credible evidence to support the commission's findings, I would affirm the commission's award. I therefore, dissent.