COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Moon, Judges Baker and Coleman
Argued by teleconference


HUSS INC. and
 AETNA CASUALTY & SURETY COMPANY
                                  MEMORANDUM OPINION[*] BY
v.   Record No. 2527-95-2    CHIEF JUDGE NORMAN K. MOON
                                       APRIL 30, 1996
LEON E. ADAMS


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION


            F. Brawner Greer (John M. Oakey, Jr.,
            McGuire, Woods, Battle & Boothe, L.L.P. on
            briefs), for appellants.

            J. Gorman Rosenberger, Jr. (Wilson, Garbee &
            Rosenberger, on brief), for appellee.


        Huss, Inc. and its insurer appeal from the decision of the

Workers' Compensation Commission that claimant Leon Adams'

suspension of benefits was subject to cure.  Huss argues that the

commission arbitrarily disregarded the deputy commissioner's

credibility findings, and that the suspension of benefits was not

subject to cure because Adams was terminated for cause.  We

affirm the commission's decision.

        Claimant Leon Adams was employed by Huss as a truck driver.

 He sustained a compensable injury in a driving accident.  About

six weeks after the accident he returned to light duty work at

Huss as a night watchman.  The company already had one night

watchman, who was on duty at the same time as the claimant.

_____

        [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

On June 20, 1994, Adams' supervisor reported to Ken Scott, director of safety for Huss, that the coin box of one of the vending machines had been vandalized and the coins stolen. Time cards had been burned, and a socket set and a radio were missing. The first night watchman admitted vandalizing the machine and burning the time cards. It is unknown who took the tools and the radio.

Adams testified that he did not find out about the vandalized vending machine until the employer informed him by telephone. He did notice the burned time cards, apparently when he clocked out at the end of his shift. He stated that he reported the burned time cards to the watchman who relieved him. He did not report the burned cards to his supervisor but "figured that guy would tell him because he was over me."

Adams testified that his supervisor told him to stay outside and make sure nothing was stolen out of the yard. He stated that he only went inside to use the bathroom. He also acknowledged that he was told to answer the telephone. He regarded the other watchman as primarily responsible for the inside of the building.

Ken Scott testified that the night watchmen were stationed in two connecting rooms, one where the vending machines were located and another with a desk, file cabinets, and the telephone. While he agreed that the claimant's duties included walking around the yard, Scott testified that Adams' description of his job did not "sound consistent" with the duties of a night watchman at Huss, and that Adams' supervisor had told him that he

did not tell Adams to stay outside.

Adams was fired from the light duty job as a result of the vandalization and theft. According to Huss, Adams was fired because he failed to do his job of patrolling the property, both inside and out, and because he failed to report the incidents to his supervisor. Huss does not accuse Adams of participating in the vandalism.

The deputy commissioner entered an award reflecting the payments already made but terminating the claimant's temporary partial disability benefits. The deputy commissioner found that the claimant's testimony that he was to stay outside and watch the building was not credible, and found that Scott's testimony to the contrary was credible. He also found incredible Adams' testimony that he did not know about the vandalized machine. In making these findings, he stated that he had considered the "demeanor" of the witnesses, but made no specific observation concerning demeanor. Based on his finding that Adams knew of the incidents and failed to report them to his supervisor, the deputy commissioner found that the employer had met its burden of proving that the claimant was terminated from selective employment for cause, and on that basis terminated the benefits.

The full commission reversed. It did not specifically address the deputy commissioner's credibility findings, but made opposite findings on the job description and the claimant's knowledge of the incidents. It found that the employer had to prove wilful misconduct, and had not done so.

The commission disregarded the deputy commissioner's finding that the claimant's testimony was not credible. Where the deputy commissioner's findings on credibility are based on a recorded observation of a witness' demeanor or appearance, the commission cannot arbitrarily disregard such findings. Bullion Hollow Enterprises v. Lane, 14 Va. App. 725, 729, 418 S.E.2d 904, 907 (1992); Goodyear Tire & Rubber Co. v. Pierce, 5 Va. App. 374, 382-83, 363 S.E.2d 433, 437-38 (1987). Here, however, the deputy made no specific observation concerning the demeanor of the witnesses, but simply mentioned it in passing. Moreover, most of the factors affecting credibility appear in the record. In such circumstances, the commission could properly reverse the deputy commissioner's findings on credibility without articulating a specific reason for doing so. Bullion Hollow Enterprises, 14 Va. App. at 729, 418 S.E.2d at 907; Goodyear Tire and Rubber Co., 5 Va. App. at 383, 363 S.E.2d at 438.

The commission held that Adams could cure the suspension of benefits because the employer did not show that he committed wilful misconduct. The employer argues that cure is barred with respect to any termination for cause that is unrelated to the employee's disability or health.

In Chesapeake & Potomac Telephone Co. of Virginia v. Murphy, 12 Va. App. 633, 406 S.E.2d 190, aff'd on reh'g, 13 Va. App. 304, 411 S.E.2d 444 (1991), the Court held that an employee terminated "for cause" from selective employment procured by the employer forfeits his right to cure by obtaining other employment. In

- 4 -

*Eppling v. Schultz Dining Programs*, 18 Va. App. 125, 128, 442 S.E.2d 219, 221 (1994), the Court stated that where an employee is discharged from selective employment, the discharge must be "justified" in order to warrant a permanent forfeiture of benefits. Not every discharge to which the employer can assign a reason is a "justified" discharge, and the commission errs if it does not consider the nature of the conduct leading to the discharge. *Id.* at 128-29, 442 S.E.2d at 221-22. In *Eppling*, the Court reversed the commission's ruling that the claimant was permanently barred from benefits on the ground that the employee's conduct was not "the type of wilful misconduct or misbehavior that, upon termination, justifies a forfeiture of workers' compensation benefits" under *Murphy*. *Id.* at 130, 442 S.E.2d at 222.

The same is true here. We construe the evidence in the light most favorable to Adams, *R.G. Moore Building Corp. v. Mullins*, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990). Factual findings of the commission will not be disturbed on appeal, if based on credible evidence. *Hercules, Inc. v. Gunther*, 13 Va. App. 357, 361, 412 S.E.2d 185, 187 (1991). Viewing the evidence in the light most favorable to Adams and accepting his testimony as credible, Adams was guilty only of reporting the burning of the time cards to the wrong individual. This does not constitute the sort of "wilful misconduct or misbehavior" that would justify a permanent forfeiture of benefits. For these reasons, we affirm the commission's

- 5 -

decision.

      <u>Affirmed.</u>