COURT OF APPEALS OF VIRGINIA


Present:    Judges Humphreys, Felton and McClanahan
Argued at Salem Virginia


GARY LEE MELTON
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0784-04-3                      JUDGE WALTER S. FELTON, JR.
                                                         DECEMBER 7, 2004
ATLANTIC GROUP, INC. AND LIBERTY
 MUTUAL FIRE INSURANCE COMPANY


                FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Wanda A. Dotson (George L. Townsend; Chandler, Franklin &
            O'Bryan, on briefs), for appellant.

            E. Albion Armfield (Frith Anderson & Peake, on brief), for
            appellees.


        Gary Lee Melton (claimant) appeals a decision of the Workers' Compensation

Commission terminating his award of temporary total disability benefits.  Claimant contends that

the commission erred in failing to dismiss the application filed by employer (Atlantic Group, Inc.

and its insurance carrier Liberty Mutual Fire Insurance Company) for termination of temporary

total disability benefits because the application failed to include grounds for the relief sought.

Claimant also contends that the commission erred in finding that he failed to market his residual

work capacity.  For the reasons that follow, we affirm the commission's decision.

                                        BACKGROUND

        On appeal, we view the evidence in the light most favorable to the party prevailing

below, here the employer.  Clinchfield Coal Co. v. Reed, 40 Va. App. 69, 72, 577 S.E.2d 538,

539 (2003).

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

So viewed, the evidence established that on March 29, 2001, claimant suffered a compensable workplace injury when he seriously injured his left thumb while using a table saw. Employer accepted the claim, and the commission awarded lifetime medical benefits and temporary total disability benefits at a rate of $333.35 per week, based on claimant's pre-injury weekly average earnings of $500 on May 25, 2001.

As a result of his injury, claimant underwent surgery on his thumb, requiring a nerve graft using his left leg sural nerve. He later complained of pain in his left ankle and leg, which his surgeon attributed to be secondary to the harvesting of the sural nerve. Claimant's surgeon advised him that he could return to light duty work.

On August 17, 2001, claimant returned to work, earning the same hourly rate as before his injury. Employer paid claimant's temporary total disability benefits award through August 16, 2001, the day before claimant resumed work.

On November 2, 2001, claimant moved to North Carolina to be near his father, who was terminally ill. He continued working for employer at its North Carolina facility, where he performed a different job but at an hourly wage rate in excess of his pre-injury rate. Later that month, claimant was treated in an emergency room after complaining of chest pains. On December 2, 2001, employer terminated claimant's employment for excessive absenteeism resulting from his unrelated health problems and his father's terminal illness. Employer did not resume paying disability compensation to claimant when it terminated his employment.

Claimant did not work again until June or July 2002, when he was employed as a support manager in the automotive department of a Wal-Mart store in North Carolina, earning $9 per hour and working about thirty hours per week. He quit the Wal-Mart job, complaining that he was required to be on his feet too much. After leaving Wal-Mart, he failed to seek additional employment.

On August 16, 2002, claimant requested that the commission order employer to pay temporary total disability compensation benefits from the date claimant resumed work for employer on August 17, 2001 on the grounds that his rate of pay was less than his pre-injury rate. He also requested that the commission award the statutory 20% penalty for failure to timely pay benefits. On August 30, 2002, employer filed a change of condition application to terminate the May 25, 2001 temporary total disability benefits award, asserting that claimant returned to work on August 17, 2001, earning an average weekly wage rate greater than his pre-injury rate.

On October 18, 2002, while claimant remained unemployed, he was examined by Dr. Paul in North Carolina for ankle pain. Dr. Paul released claimant to work on October 28, 2002, finding him able to perform sedentary employment. The parties subsequently stipulated that claimant was totally disabled between October 18 and October 28, 2002, and was entitled to disability compensation benefits for that period.

On April 4, 2003, more than a year after employer terminated his employment and while he remained unemployed, claimant sent a letter to his former employer asking it to provide vocational rehabilitation services for him. He sent a copy of his request to the commission, but did not ask the commission to direct employer to provide those services.

On June 17, 2003, a deputy commissioner heard employer's application to terminate the outstanding temporary total disability benefits award based on claimant's return to work on August 17, 2001. He found that claimant returned to work on August 17, 2001, earning a post-injury weekly average of $598.40 over a fifteen-week period, an amount equal to or greater than his pre-injury wage rate. He also found that claimant failed to market his residual work capacity either before or after he was cleared to perform sedentary work. The deputy commissioner ordered the May 25, 2001 award terminated as of August 16, 2001; awarded temporary total disability benefits for the period October 18, 2002 to October 28, 2002 in

- 3 -

accordance with the parties' agreement; ordered the continuation of medical benefits; and ordered employer to provide vocational rehabilitative services to claimant.

The full commission affirmed the deputy commissioner's findings. This appeal followed.

ANALYSIS

A. Employer's Application For A Change in Condition

Claimant contends that the employer's change-in-condition application seeking termination of the May 25, 2001 award was facially void as it failed to state the grounds for relief required by Commission Rule 1.4. Specifically, he argues that the evidence did not support that he returned to work on August 17, 2001 at a weekly wage equal to or in excess of his pre-injury average weekly wage. We disagree.

"When a challenge is made to the commission's construction of its rules, 'our review is limited to a determination of whether the commission's interpretation of its own rule was reasonable.'" Boyd v. People, Inc., 43 Va. App. 82, 86, 596 S.E.2d 100, 102 (2004) (quoting Classic Floors, Inc. v. Guy, 9 Va. App. 90, 93, 383 S.E.2d 761, 763 (1989)). "We will not set aside the commission's interpretation of its rules unless that interpretation is arbitrary and capricious." Id. at 87, 596 S.E.2d at 103 (citation omitted).

"Under Commission Rule 1.4(A) and (B), an employer's application for hearing based upon a change in condition must be in writing and under oath and must state the grounds for relief and the date for which compensation was last paid." Circuit City Stores, Inc. v. Scotece, 28 Va. App. 383, 386, 504 S.E.2d 881, 883 (1998).

> An employer's application for hearing will be deemed not "technically acceptable" and will be rejected unless the employer's designated supporting documentation is sufficient to support a finding of probable cause to believe the employer's grounds for relief are meritorious. The commission has defined the standard of "probable cause" as "[a] reasonable ground for belief in the existence of facts warranting the proceeding complained of."

Gallahan v. Free Lance Star Publ'g Co., 41 Va. App. 694, 703, 589 S.E.2d 12, 17 (2003) (quoting Circuit City, 28 Va. App. at 386-87, 504 S.E.2d at 883) (internal citation omitted). While all assertions supporting the change in condition do not have to appear on the face of the application, the application must at minimum refer to documents supporting the application and there must be attached to the application those documents to permit the employee to have notice of the employer's claim. See Suite v. Clinchfield Coal Co., 8 Va. App. 554, 556, 383 S.E.2d 21, 23 (1989).

In its application, employer requested that the commission terminate or suspend the outstanding award because "the employee returned to light duty on 8/17/01 at an average weekly wage of $555.26." Employer attached to its application payroll records reflecting claimant's earnings over the fifteen weeks following his return to work. It also included claimant's surgeon's notes from August 10, 2001 instructing him "to go back to work at a restricted duty if available."

We conclude that the record contains credible evidence from which the commission could conclude that employer's application for termination of the May 2001 award complied with Rule 1.4.

Moreover, we find that credible evidence supports the commission's finding that claimant returned to work at an average weekly wage in excess of his pre-injury average weekly wage. From the record, it appears that claimant's hourly rate was equal to his pre-injury wage but that he did not work a full forty-hour week during his first week of employment following his return to work. However, the record also reflects that during the following weeks claimant worked at least forty hours a week and that he earned considerable overtime pay. The deputy commissioner found that claimant earned an average weekly rate of $598.40 during the

fifteen-week period after his return to work on August 17, 2001, a rate greater than his pre-injury average wage of $500 per week for a forty-hour work week.

From our review of the record, we find that credible evidence supports the commission's ruling. Accordingly, we conclude that the deputy commissioner did not err in refusing to dismiss employer's change-in-condition application for termination of temporary total disability compensation benefits.

### B. Failure to Market Residual Work Capacity

Claimant also contends that the commission erred in finding that he failed to market his residual work capacity during his periods of unemployment after employer discharged him for excessive absenteeism. He argues that his request that employer provide vocational rehabilitation services relieved him of his obligation to market his residual work capacity. We disagree.

Code § 65.2-603(A)(3) provides:

> The employer shall . . . furnish or cause to be furnished, *at the direction of the Commission*, reasonable and necessary vocational rehabilitation services. Vocational rehabilitation services may include vocational evaluation, counseling, job coaching, job development, job placement, on-the-job training, education, and retraining.

(Emphasis added). The statute authorizes an employer to provide vocational rehabilitative services on its own initiative or upon the request of the employee. However, contrary to claimant's contention, Code § 65.2-603 does not require an employer to provide vocational rehabilitative services unless directed to do so by the commission.

On April 4, 2003, over a year after employer terminated claimant's employment for excess absenteeism, claimant requested vocational rehabilitation services from employer. While claimant sent a copy of his letter containing his request to the commission, he did not seek the assistance of the commission to direct employer to provide this service, nor did he request a

- 6 -

hearing to argue why it should be compelled to do so when employer refused. "In the event a dispute arises, any party may request a hearing and seek the approval of the Commission for the proposed services." Code § 65.2-603(A).

Based on the plain language of Code § 65.2-603, we conclude that the commission did not err in ruling that employer was not obligated to provide vocational rehabilitative services solely on claimant's request.

Claimant's contention that he was not obligated to market his residual work capacity once his employer denied him vocational rehabilitative services also fails.

The record reflects that claimant returned to work for employer on August 17, 2001, earning an average weekly wage in excess of his average pre-injury wage. On December 2, 2001, employer terminated claimant's employment because of excessive absenteeism unrelated to his compensable condition. "[W]here a disabled employee is terminated for cause from . . . employment . . . by his employer, any subsequent wage loss is properly attributable to his wrongful act rather than his disability," and he forfeits his right to disability compensation benefits. Chesapeake & Potomac Tel. Co. v. Murphy, 12 Va. App. 633, 639-40, 406 S.E.2d 190, 193 (1991). However, termination "for cause" does not always result in a permanent forfeiture of claimant's entitlement to disability compensation benefits, where claimant's conduct resulting in dismissal was not of a character to warrant permanent loss of disability compensation benefits. Eppling v. Schultz Dining Programs, 18 Va. App. 125, 128-30, 442 S.E.2d 219, 221-22 (1994).[1]

However, a partially disabled employee, whose employment termination is not of a character so as to warrant permanent loss of disability compensation benefits, nevertheless must make reasonable efforts to market his residual work capacity in order to receive continued

---

[1] In Eppling, this Court held that a discharge "for cause" related to excessive absenteeism not within employee's control did not constitute such misconduct as to justify a permanent forfeiture of disability compensation benefits. See id. at 130, 442 S.E.2d at 222.

disability compensation benefits. See National Linen Service v. McGuinn, 8 Va. App. 267, 269, 380 S.E.2d 31, 33 (1989) (citing Washington Metropolitan Area Transit Authority v. Harrison, 228 Va. 598, 324 S.E.2d 654 (1985)). Moreover, during the employee's continued refusal to market his residual work capacity, "Code § 65.2-510 suspends benefits and relieves the . . . employer from any obligation to pay wage-loss benefits." Food Lion, Inc. v. Newsome, 30 Va. App. 21, 26, 515 S.E.2d 317, 319-20 (1999).

The record reflects that between August 17 and December 2, 2001 claimant returned to work at an average wage higher than his pre-injury earning levels. Following his employment termination in December 2001 for absenteeism, claimant remained unemployed until he was employed for one month at Wal-Mart in June or July 2002. He left his employment without explanation to Wal-Mart. When asked what efforts had he made to look for work following that time, he answered, "Nothing. What's the use?" He testified that he did not look for work because he believed no employer would hire him.

The commission found no evidence that claimant had marketed his residual work capacity during his period of unemployment. Absent such marketing, the commission determined that claimant was not entitled to disability compensation benefits during that period. "Decisions of the commission as to questions of fact, if supported by credible evidence, are conclusive and binding on this Court." Gallahan, 41 Va. App. at 703, 589 S.E.2d at 17 (citation omitted); Code § 65.2-706(A). Because credible evidence supports the commission's findings that claimant was required to market his residual work capacity and he failed to do so, we find no error in the commission's ruling.

CONCLUSION

We find no error in the commission's determination that employer's change-in-condition application complied with the Rules of the Commission and that the May 25, 2001 temporary

total disability compensation award be terminated effective August 17, 2001, when claimant returned to work at a wage equal to or greater than his pre-injury wage. We also find no error in the commission's finding that claimant failed to market his residual work capacity during his unemployment and that employer's failure to grant claimant's request for vocational rehabilitative services did not relieve claimant from marketing his residual work capacity.

For the above reasons, we affirm the commission.

<u>Affirmed.</u>