COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Frank and Kelsey
Argued at Richmond, Virginia


PIER 1 IMPORTS, INC. AND
  AMERICAN ZURICH INSURANCE COMPANY
                                                    MEMORANDUM OPINION* BY
v.        Record No. 2193-11-4              CHIEF JUDGE WALTER S. FELTON, JR.
                                                         MAY 29, 2012
HELEN ESTHER WRIGHT


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            S. Vernon Priddy III (Mary Louise Kramer; Two Rivers Law Group,
            P.C., on briefs), for appellant.

            Kathleen Grace Walsh (Law Office of Kathleen Grace Walsh, on
            brief), for appellee.


                            I.  BACKGROUND

        Pier 1 Imports, Inc. and American Zurich Insurance Company (collectively "employer")

appeal from a decision of the Virginia Workers' Compensation Commission (the "commission")

finding that employer terminated Helen Wright ("claimant") without cause and that her termination

did not justify a forfeiture of temporary total disability benefits under Code § 65.2-510(A).

Employer asserts the commission erred in its application of Artis v. Ottenberg's Bakers, Inc., 45

Va. App. 72, 608 S.E.2d 512 (2005), in finding that claimant's wrongful conduct leading to her

termination was involuntary.

        On November 3, 2007, claimant sustained a compensable work-related injury by accident to

her head and the left side of her body when she fell backward onto a concrete floor while attempting

to move an armoire at work.  On October 30, 2009, claimant sought temporary total disability

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

benefits from November 4 through November 19, 2007, and beginning October 12, 2009 and continuing. At a hearing before the deputy commissioner on October 5, 2010, employer stipulated that claimant sustained a head hematoma, aggravation of a preexisting migraine condition, dizziness, and a left hip injury as a result of her injury by accident at work. The parties stipulated that the only issue before the deputy commissioner was whether employer terminated claimant for cause.

Claimant had worked for employer for nine years prior to her accident. During that time, employer promoted claimant from sales manager to store manager, increased her wages, awarded claimant financial bonuses, and gave her positive feedback on all annual performance reviews. At the time of her accident, claimant was working for employer as a store manager in Gainesville, Virginia.

After her accident in November 2007, Dr. Hoda M. Hachicho, neurologist, diagnosed claimant with post-traumatic headaches, blurred vision associated with headaches, post-concussion syndrome, transient cerebral ischemia, and post-traumatic neck pain. Dr. Kevin E. Peltier, orthopedic surgeon, treated claimant's left hip symptoms, including pain and limping, and released claimant to work with restrictions of no lifting over forty-nine pounds, and no bending, stooping, or squatting. Claimant continuously reported problems with short-term memory, concentration, and her ability to complete familiar tasks. Dr. Hachicho treated claimant for severe and frequent headaches, neck pain, numbness on the right side of her face, and prolonged migraines.

Approximately one year after claimant's accident, Marlene Marchion, regional manager for employer, began periodically inspecting claimant's store.[1] Marchion testified that she visited

_____

[1] Claimant's store had not been assigned a regional manager since the latter half of 2007. Employer hired Marchion in May 2008.

claimant's store multiple times and advised claimant that she did not manage the store pursuant to employer's policies, including merchandising, organizing the stockroom, managing personnel, and producing her weekly sales focus report.[2]

Claimant testified that she believed her medical condition contributed to the difficulty she experienced in understanding the reports and analysis required by employer and in unloading, organizing, and displaying merchandise. Claimant testified that because of her injuries, she "was a little slower at getting all the moves done."

In July 2009, after months of witnessing "common repeated deficits" in claimant's store, Marchion gave claimant a poor performance evaluation. Marchion testified that she did not know about claimant's work injury until after she had prepared the evaluation. She testified that claimant did not disagree with the criticisms she leveled in the July 2009 evaluation and that claimant told her that, because of her injuries, she was often forgetful.

Marchion agreed that "[i]t wasn't that [claimant] wasn't trying; it's not that she didn't want to be successful, she just didn't get it." Marchion explained that claimant's job changed

> from very much an operational kind of culture where you just kind of put the merchandise on the floor . . . to one . . . that really hones on driving results and understanding . . . how you do that and by what means you do that through training and development and then . . . actually achieving that result and understanding why.

Marchion testified that she scheduled follow-up meetings with claimant after her poor performance evaluation in July 2009, and terminated her in October 2009 because of "[her] inability to perform her job to a satisfactory level."

---

[2] The sales focus report was a weekly report that employer required claimant to prepare. The report informed claimant's employees and supervisors of past performance and future objectives for the store.

The deputy commissioner found that claimant's poor performance at work did not justify the permanent forfeiture of disability benefits on her termination, pursuant to Code § 65.2-510(A).[3] The deputy commissioner also found that the medical record unambiguously established that physical limitations due to her left hip injury prevented claimant from performing the physical aspects of her job, including unloading the delivery truck, straightening up the storeroom, and placing merchandise on the store floor. The deputy commissioner concluded:

> Overall we perceive that the claimant's injuries were not the sole cause of her difficulties with Ms. Marchion's evaluations but they most assuredly did contribute to her ability to physically perform the job, which by all appearances was not considered in the decision to terminate her employment after nine years during which time she sustained a work injury that has left her with aggravated migraines, dizziness and left hip problems. Under such circumstances we conclude that the claimant's lost wages [have] been in part due to her disability and we find no wrongful act on her part that justifies the permanent forfeiture of disability benefits upon her termination.

Employer appealed to the commission. On appeal, the commission found that claimant's misconduct was involuntary and that "she was [not] responsible for the actions that caused the employer to terminate her." The commission found that "[claimant's] conduct resulted from injuries sustained in her work accident." The commission concluded:

> This is not a case where the claimant is responsible for her wrongful act. Rather, the wage loss is attributable, at least in part, to her disability stemming from the accident. The claimant's termination does not meet the Artis[, 45 Va. App. 72, 608 S.E.2d 512,] standard, and she was not terminated for justified cause.

---

[3] Code § 65.2-510(A) provides:

> If an injured employee refuses employment procured for him suitable to his capacity, he shall only be entitled to the benefits provided for in [Code] §§ 65.2-503 and 65.2-603, excluding vocational rehabilitation services provided for in subdivision A 3 of [Code] § 65.2-603, during the continuance of such refusal, unless in the opinion of the [c]ommission such refusal was justified.

The commission affirmed the deputy commissioner's award of temporary total disability benefits from November 4 through November 19, 2007, inclusive, and from October 19, 2009 and continuing.

## II.  ANALYSIS

"On appeal from a decision of the [commission], the evidence and all reasonable inferences that may be drawn from that evidence are viewed in the light most favorable to [claimant,] the party prevailing below."  Artis, 45 Va. App. at 83, 608 S.E.2d at 517.  "[W]e are bound by the commission's findings of fact so long as 'there was credible evidence presented such that a reasonable mind *could* conclude that the fact in issue was proved,' even if there is evidence in the record that would support a contrary finding."  Id. at 83-84, 608 S.E.2d at 517 (quoting Westmoreland Coal Co. v. Campbell, 7 Va. App. 217, 222, 372 S.E.2d 411, 415 (1988)).

As this Court has previously held,

> "A justified discharge . . . does not simply mean that the employer can identify or assign a reason attributable to the employee as the cause for his or her being discharged.  Whether the reason[] for the discharge is for cause, or is justified for purposes of forfeiting benefits must be determined in the context of the [Workers' Compensation] Act and whether the conduct is of such a nature that it warrants permanent forfeiture of those rights and benefits."

Walter Reed Convalescent Center/Virginia Health Servs. v. Reese, 24 Va. App. 328, 336, 482 S.E.2d 92, 96-97 (1997) (citations omitted) (quoting Eppling v. Schultz Dining Programs, 18 Va. App. 125, 128, 442 S.E.2d 219, 221 (1994)).

An employee "who is terminated for cause and for reasons not concerning his disability is not entitled to receive compensation benefits."  Chesapeake & Potomac Tel. Co. v. Murphy, 12 Va. App. 633, 637, 406 S.E.2d 190, 192, aff'd en banc, 13 Va. App. 304, 411 S.E.2d 444 (1991). All that is required to justify a termination for cause and a forfeiture of compensation benefits "is a showing:  (1) that the wage loss is 'properly attributable' to the wrongful act; and (2) that the

employee is 'responsible' for that wrongful act."[4] Artis, 45 Va. App. at 85, 608 S.E.2d at 518 (quoting Reese, 24 Va. App. at 336, 482 S.E.2d at 97).

Employer asserts that the commission erred in finding that claimant was entitled to temporary total disability benefits because it concluded that her wrongful conduct was caused "at least in part" by her disability. Employer contends that, pursuant to the Court's holding in Artis, the commission must find that claimant's wrongful conduct was *wholly* caused by her disability in order for claimant to receive wage loss benefits. Employer asserts that anything less than a finding by the commission that claimant's wrongful conduct was wholly caused by her disability relieves claimant of her burden to prove, under the second prong of the Artis analysis, that her wrongful conduct was involuntary.

Employer correctly notes that "the burden of proof is on the claimant to demonstrate that [her] termination was attributable to [her] disability rather than [her] wrongful act." Id. at 86, 608 S.E.2d at 518. However, employer otherwise misconstrues the Court's holding in Artis.

In Artis, the claimant, a bakery delivery truck driver, sustained a compensable psychiatric injury at work when he struck and killed a pedestrian who ran in front of his vehicle. Id. at 77, 608 S.E.2d at 514. Artis's employer discharged him approximately nine months after the accident when he staged a robbery in an attempt to murder a coworker. Id. at 79-80, 608 S.E.2d at 515. The Court held that, because the evidence in the record showed that "Artis' misconduct was *purely voluntary* in nature, the commission did not err in determining that [his] termination for cause justified a forfeiture of benefits." Id. at 93, 608 S.E.2d at 522 (emphasis added).

Here, unlike in Artis, the commission made a factual finding that claimant's conduct was not purely voluntary, but rather was caused "at least in part" by her disability. The commission

---

[4] Claimant does not assign cross-error to the commission's finding, under the first prong of the Artis analysis, that her "insufficient and unacceptable performance" at work constituted a wrongful act for which she was terminated.

attributed her wrongful conduct to "injuries sustained in her work accident," including "memory problems" and "day-long headaches that interfered with her work." Because the record supports the commission's determination that claimant's poor performance at work was attributable to her injury and its residual involuntary effects, and not attributable to "purely voluntary" misconduct, id., we affirm the commission's award of post-termination partial disability benefits.[5]

Affirmed.

---

[5] Employer asserts that, even if the Court holds that employer terminated claimant without cause, the commission erred by not holding that her termination constituted an unjustified refusal of her light-duty job with employer, resulting in the termination of her wage loss benefits. This assignment of error is waived pursuant to Rule 5A:18 ("No ruling of the . . . [commission] will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling . . . ."). Here, employer did not move for reconsideration of its assertion of unjustified refusal by claimant of light-duty work after the commission issued its opinion. See Williams v. Gloucester Sheriff's Dep't, 266 Va. 409, 411, 587 S.E.2d 546, 548 (2003) (if the commission fails to address an issue, the aggrieved party should file a motion to reconsider the issue in order to preserve the argument for appeal). There was "no reason why employer could not have given the commission an opportunity to correct th[e] alleged error prior to appeal." Overhead Door Co. v. Lewis, 29 Va. App. 52, 62, 509 S.E.2d 535, 539 (1999). The Court will not consider for the first time on appeal employer's argument that claimant's termination constituted an unjustified refusal of her light-duty job with employer, and should have resulted in the termination of her wage loss benefits.