Richmond

GOODYEAR TIRE & RUBBER COMPANY, ET AL.

v.

JOSEPH EUGENE WATSON

March 2, 1979.

Record No. 780646.

Present: All the Justices.

*James A. L. Daniel (Meade, Tate & Daniel,* on brief), for appellants.

*Ronald W. Williams (Warren, Parker, Williams and Stilwell,* on brief), for appellee.

I'ANSON, C.J., delivered the opinion of the Court.

Joseph Eugene Watson filed an application with the Industrial Commission on September 12, 1977 seeking reinstatement of compensation benefits from Goodyear Tire and Rubber Company, employer, and Travelers Indemnity Company, insurer, on the ground that Goodyear unjustifiably discharged him from its employment on September 1, 1977 while he worked in a selected work status at pre-injury wages after suffering a work-related injury on May 3, 1977.

A Deputy Commissioner dismissed the application on the ground that Watson's attitude, misconduct, and poor work performance justified Goodyear in terminating him as an employee. The full Commission reversed the finding on the ground that there was no evidence that Watson performed his selected work in an unsatisfactory manner and ordered resumption of his compensation payments effective September 1, 1977.

The evidence shows that Watson commenced work with Goodyear in April 1974 as a tire builder. Watson's immediate supervisor, shift foreman and department foreman characterized his job performance as below average (approximately 72 percent of job level) and his rate of absenteeism as exceptionally high. During Watson's term of employment with Goodyear, April 1974 through August 1977, he missed 24 days due to personal illness, 11 days of work due to personal business, 4 days without reporting that he would be absent from work, and 228 days due to compensable occupational injuries. On six occasions, he reported to work more than six minutes late (tardiness less than six minutes was not reportable) and he made 134 visits to the plant dispensary. He

suffered six occupational injuries resulting in his being placed on lighter, selective work for a total of 225 days since beginning work in 1974. The following figures show the percentages by year of scheduled work days Watson missed:  1974 — 10 percent; 1975 — 45 percent; 1976 — 33 percent; 1977 — 54 percent.

Watson received several warnings concerning his poor work performance and his low work production. On March 1, 1977 Watson's immediate supervisor cited him for building a defective tire and low production performance. His department foreman cited him for poor work performance on April 29, 1977 and placed a disciplinary letter in his work file. He was warned that disciplinary action would be taken if his production did not improve.

On May 3, 1977 Watson suffered a compensable back injury for which he received compensation during the period of his disability. He returned to work on July 28 and was assigned light work repairing tires in accordance with the recommendations of his doctors.

Watson's immediate supervisor, shift foreman, and department foreman testified that after Watson returned to work on July 28, they had trouble keeping him working at his work station. He would leave and "mill around" the plant with the other production employees, arrive at his work area late, and spend an inordinate amount of time in the "break area" which was located approximately one hundred to one hundred and thirty yards across the plant from his work station. He displayed indifference concerning his work and did not appear conscious of his job responsibility. Watson's shift foreman recommended that he be discharged and his department foreman described him as a "very poor" employee.

On August 15 Watson left work to undergo non-job-related surgery for an ingrown toenail. When Watson reported for work on September 1, 1977 following his absence due to surgery for the ingrown toenail, he was kept out of work and told to meet with his labor union representative and the company's department foreman the next morning at 9:00 a.m. to discuss his "diminished value as an employee." He arrived seventeen minutes late for that meeting. Goodyear officials, Watson, and his union representative met again on September 6 to discuss further the subject of his diminished value as an employee. On September 7, the employer advised Watson in writing of his discharge for the reason that he had "been absent from work to the extent [his] services [were] no longer of any value to the company."

Watson offered no evidence to explain his poor work record during the time of his employment at Goodyear or to dispute any of the testimony of the company's witnesses.

Goodyear and Travelers contend that the Commission's factual findings are not supported by any credible evidence.

■ Upon appeal, the Commission's findings of fact, based on credible evidence, are conclusive and binding upon us. Code § 65.1-98. If, however, there is no credible evidence to support the Commission's findings of fact, its findings are not binding on us and the question of the sufficiency of the evidence becomes one of law. *A & P* v. *Robertson*, 218 Va. 1051, 1053, 243 S.E.2d 234, 235 (1978); *Conner* v. *Bragg*, 203 Va. 204, 207, 123 S.E.2d 393, 395 (1962).

■ In the present case, the uncontradicted evidence shows that Watson was an exceedingly poor worker during the entire period of his employment with Goodyear, that he had a great number of absences from work, and that several times he left his job without authorization. Even the Commission noted in its opinion that Goodyear had cause to complain about Watson's "performance prior to his industrial accident."

After Watson returned to work on July 28 at his pre-injury wages and was assigned to light work on the recommendations of his doctors, his work was abysmal. He did not deny that he constantly arrived late at his work area, that he was often away from his work station milling around in the plant, that his production was poor, and that he appeared indifferent to his work responsibility. Nor did Watson present any evidence by way of an excuse for his poor selective work record or make any claim that the job of repairing tires was too difficult for him to perform because of his May 3 injury.

The Commission's findings that there was no evidence that Watson performed his selected work in an unsatisfactory manner and that his low production "could well [have been] attributable to the back injury or toe problem" are not supported by any credible evidence. When Watson's actions and conduct in connection with his selected work following his return to work on July 28 are considered, it cannot be inferred from any evidence in the record that Watson was discharged as a result of his May 3 injury or his toe problem. Watson's frequent absences from his selective work station, poor work performance, and attitude toward his job justified his discharge.

For the reasons stated, the award of the Commission is reversed and Watson's claim will be dismissed.

*Reversed and dismissed.*