**Chesapeake**

JULES HAIRSTYLISTS, INC., et al.

v.

HAZEL GALANES

No. 0035-85

Argued May 29, 1985

Decided September 3, 1985

COUNSEL

Forest A. Nester (Seawell, Dalton, Hughes & Timms, on brief), for appellants.

Woodson T. Drumheller, for appellee.

OPINION

COLE, J.—This is an appeal of a decision of the Industrial Commission finding that the appellants, Jules Hairstylists, Inc. (employer), had not borne the burden of proving a change in condition based upon the ground that Hazel Galanes (claimant) refused to interview for selective work.

The claimant sustained a fracture of the left shoulder by accident on November 6, 1979. The injury arose out of and in the course of her employment. The employer's insurance carrier accepted the claim and paid compensation for total work incapacity beginning November 6, 1979, through November 10, 1981, when the award was terminated. An award was entered on January 20, 1983, providing the claimant compensation for 30% permanent partial loss of use of the left arm covering a period of 60 weeks. The claimant was awarded additional temporary total disability benefits beginning March 3, 1983, pursuant to her application alleging a change of condition. This award continued until May 30, 1984, when the insurance carrier filed an application before the Industrial Commission, alleging a change of condition from the compensable industrial accident of November 6, 1979. The basis for the application was that the claimant had "refused to interview for selective employments on 5-18-84 and 5-22-84 for positions approved by Dr. Butterworth." This review is limited to the issues addressed in that application.

This appeal involves the application of § 65.1-63 of the Virginia Workers' Compensation Act, which states:

If an injured employee refuses employment procured for him suitable to his capacity, he shall not be entitled to any compensation at any time during the continuance of such refusal, unless in the opinion of the Industrial Commission such refusal was justified.

■ In *Talley* v. *Goodwin Brothers Lumber Co.*, 224 Va. 48, 52, 294 S.E.2d 818, 820 (1982), and in *Klate Holt Co.* v. *Holt*, _ Va. _, 331 S.E.2d 446 (1985), the Supreme Court said when the employer establishes that a job offer has been tendered within the residual capacity of the injured employee, the burden of persuasion then shifts to the employee to show justification for refusing the offer of selective work. We, therefore, have two facts to consider. First is whether the employer offered suitable selective employment within the capacity of the claimant, and second is whether the claimant, if she refused the offer, was justified in doing so. In view of our decision in this case, we need only consider the first factor.

In this case no job offer was made, due at least partly to the fact that the claimant did not attend the interviews. The Industrial Commission has held that if a claimant fails without justification to keep a job interview, this amounts to a refusal of an offer of selective work suitable to his capacity. *Pleasants* v. *Fairfax County Police Department*, 58 O.I.C. 289, 293 (1978); *Flowers* v. *Clinebell*, 57 O.I.C. 124, 125 (1976). No issue has been taken in this case as to this holding.

The injury to the claimant's shoulder was severe. The claimant slipped on a wet floor and fractured the left humerus. The claimant's surgeon gave her a 30% permanent disability, and an independent medical examination made at the request of the employer rated the disability even higher. Both doctors stated that the claimant could not return to her previous job as a hairdresser, but that a light duty position could be tailored to her left shoulder disability.

Armed with these reports, the insurance carrier employed Crawford Rehabilitation Services to aid the claimant in securing employment, and one of their employees, Francis Charles DeMark, Jr., was assigned to the case. The consultant prepared job descriptions for three job types that he thought would be suit-

able for the claimant to perform. The first was a clerk-receptionist, which required telephone, typing and filing responsibilities. The second was a sales clerk, or salesperson, in general retail trade. Here the worker would advise customers concerning the use and quality of the merchandise, and other duties may include demonstrating the merchandise sold, stocking shelves, marking prices, totaling price and tax on merchandise, receiving payment, making change, keeping records of sales, cleaning the store, and preparing inventory of stock to order merchandise. The third was a cashier or self-service gas station attendant. The worker would be required to count monies for gas and keep records of sales of other retail items, such as cigarettes, oil, soft drinks, candy, etc.

From the beginning, conflict arose between the consultant, DeMark, and the claimant over the capacity of the claimant to perform selective employment. The employer contends that the consultant arranged three job interviews for the claimant, namely, with Command Performance, a hairstyling salon, and with a Texaco service station, both scheduled on May 18, 1984, and the third scheduled on May 22, 1984, with a second Command Performance salon. The employer argues that these three jobs were within the capacity of the claimant, and call for less skill and capacity than the job descriptions suggest. The claimant asserts that the Texaco job was not within her capacity to perform, and alleges that she was never advised by the consultant of the Command Performance interviews. The Industrial Commission found that the question presented was one of credibility and, after finding that the testimony of the claimant was sincere and that she desired to work, resolved the factual conflict in favor of the claimant.

In argument before this court, employer acknowledges that the job sought in the interview with Texaco scheduled on May 18, 1984, was beyond the capacity of the claimant because of her inability to make mathematical calculations and to handle money. However, it was argued that the first position for which the claimant was scheduled to interview on May 18, 1984, was that of a receptionist at Command Performance, and that this position only involved answering the telephone, making appointments, and greeting customers and that the claimant did have the capacity to perform these duties. Therefore, we will consider only the two interviews in dispute with Command Performance.

In regard to the Command Performance interviews, DeMark testified that he met with the claimant in her home on May 16, 1984, and explained to her that he had job interviews scheduled on May 18, 1984, for her with Command Performance and with a Texaco station and that he explained the types of jobs to her. He stated that the claimant excused herself from the interviews, claiming to have arranged doctor's appointments on both May 17 and May 18, 1984. The interviews were cancelled by the consultant.

Contrary to DeMark's testimony, the claimant stated that when DeMark came to see her on May 16, he did not mention anything about an interview at Command Performance as a receptionist. She testified that he only mentioned the Texaco gas station job. Corroborative of the testimony of the claimant is a letter dated May 16, 1984, written to the claimant by DeMark. The letter states "I have made contact with an employer and we have our first interview on Friday, May 18, 1984. I will pick you up at your home at 1:00 p.m. on that date." It is significant that this letter refers to only one interview and to only one employer and confirms the testimony of the claimant that only one interview, and not two interviews as contended by DeMark, was scheduled on May 18, 1984.

DeMark further testified that he secured an appointment with a second Command Performance salon at a Norfolk location on May 22, 1984, and that he hand-delivered a letter to claimant's home on May 21, 1984, advising the claimant of the interview. The claimant later called DeMark and told him that she had been in Richmond and could not make the appointment. There is no evidence in the record that she received this notice in time to make the appointment. The record does not reflect that the claimant was given any information in regard to this job, such as the distance from her home, duties, and rate of pay, in order for her to consider if this was a suitable employment.

■ On appeal, the Industrial Commission's findings of fact are conclusive and binding on the appellate court if based on credible evidence. Code § 65.1-98; *Goodyear* v. *Watson,* 219 Va. 830, 833, 252 S.E.2d 310, 312 (1979). As the reviewing court, it is our duty to determine whether credible evidence supports the Commission's finding. Only if the factual findings are not supported by credible evidence does the question of sufficiency of the evidence

become one of law and a proper subject for review on appeal. *Goodyear* v. *Watson,* 219 Va. at 833, 252 S.E.2d at 312.

We are of the opinion that there is a conflict in the evidence concerning the Command Performance interviews allegedly scheduled for May 18, 1984, and May 22, 1984, that the Industrial Commission resolved the conflict in favor of the claimant, and that there is credible evidence in the record to support the opinion of the Commission. We do not retry the facts before the Commission, nor do we review the weight, preponderance of the evidence, or the credibility of witnesses. If there is evidence or a reasonable inference that can be drawn from the evidence to support the Commission's finding, they will not be disturbed by this court on appeal. *Caskey* v. *Dan River Mills, Inc.,* 225 Va. 405, 411, 302 S.E.2d 507, 510 (1983). Because the decision of the Industrial Commission is supported by credible evidence, we cannot say it is plainly wrong as a matter of law.

There being no error in the award appealed from, the award will be *affirmed.*

*Affirmed.*

Hodges, J., and Moon, J., concurred.