**Fairfax**

RICHMOND COLD STORAGE CO., INC, et al.

v.

ROLAND BURTON

No. 0107-85

Argued May 30, 1985

Decided October 15, 1985

COUNSEL

A. W. VanderMeer, Jr. (Hunton & Williams on briefs), for appellant.

Brock Matthews, for appellee.

OPINION

**BAKER, J.**—Richmond Cold Storage Co., Inc. and its compensation carrier, Travelers Indemnity Company of America (collectively, employer), appeal from the January 10, 1985, Industrial Commission decision reinstating worker's compensation benefits to Roland Burton (claimant). The Commission's award affirmed a September 6, 1984, deputy commissioner's decision.

Claimant injured his back on January 17, 1984, while working as a laborer for employer. On February 29, 1984, the parties entered into a compensation agreement which the Commission approved on March 23, 1984.

Employer offered claimant selective employment which claimant's doctor approved, and which commenced on February 15, 1984. Employer dismissed claimant from the selective employment on March 2, 1984.

Following his dismissal, claimant sought to collect unemployment compensation. The Virginia Employment Commission (VEC) ruled on July 6, 1984, that claimant was not qualified to

receive benefits because he had been discharged for misconduct connected with his work for employer. *See* Code § 60.1-58(b).

On March 5, 1984, claimant filed a hearing application with the Industrial Commission seeking reinstatement of his worker's compensation benefits. On July 17, 1984, a deputy commissioner's hearing was held wherein employer asserted that because claimant was dismissed for cause, he was precluded from a resumption of benefits. Employer unsuccessfully maintained that the VEC's decision was conclusive and binding on the Commission regarding the justification for claimant's dismissal.

This appeal presents two issues. First, whether the VEC's decision that claimant was discharged for misconduct collaterally estops claimant from asserting that his dismissal from selective employment was not justified. Secondly, whether sufficient evidence exists to support the findings of the Commission.

At the deputy commissioner's hearing, claimant explained his dismissal as follows:

> Said I walked through the office without stopping at the reception desk . . . . I went through the main office and I took and knocked on the door and went in and asked the lady was [Robert A.] Bob Dybing [employer's vice president and secretary] in the office and she told me to check to see he was in the office. I went in there and he wasn't there and I sit there for a little while 'till he came in. (sic) (clarifications added).

Claimant testified that he went to see Dybing regarding certain withholdings from his paycheck. He maintained that on the day of his dismissal, he had the receptionist's permission to enter Dybing's office, and that he waited there less than five minutes until Dybing arrived. He stated that other employees "just walk in the office and ask what they want and they get it and then they come on out."

Claimant admitted that his immediate supervisor, Mr. Adkins, previously spoke to him concerning his presence in employer's office area:

> [H]e said, Roland, before you come in, you ought to knock before you come in because we might have a conference or

something in the office.

Robert A. Dybing testified for employer, and explained that three incidents of claimant's unauthorized presence in employer's office area preceded his decision to dismiss claimant.

The first incident occurred sometime in February, 1984, when Dybing saw claimant in the office area "without any obvious sense of direction." Dybing witnessed Mr. Adkins tell claimant "not to be in the office area without permission and to return to his — where he had been working" in employer's plant.

On March 1, 1984, Dybing entered his office and found claimant waiting there. Claimant immediately sought to discuss his paycheck. Prior to answering his question, Dybing stated that he told claimant, "you can't be in my office without my permission."

Finally, on March 2, 1984, Dybing went to his office and again found claimant there, with another paycheck related question. Dybing ordered him to leave, went directly to Mr. Adkins and directed that claimant be terminated from employment.

Dybing justified the rule barring plant laborers from the office area on two grounds: the security of cash amounts kept there, and the confidentiality of company records. He testified that no other employees repeatedly violated this rule, and that but for his violation, claimant's job would not have been lost.

Upon being questioned by claimant's counsel, Dybing admitted that no written rule exists barring laborers from the office area; that claimant was not told he would be disciplined for violating the rule; and that no one suspected claimant of attempting to steal money from the office area.

The Commission ruled that the VEC's conclusion that claimant was discharged for misconduct does not bind the Commission in its inquiry whether claimant is precluded from claiming benefits due to a justified dismissal:

> While findings of other administrative agencies and courts may be considered by the Industrial Commission, we hold that they are not binding upon us. The issues and evidence presented before the Industrial Commission, including the

above-mentioned decision [of the VEC relevant to claimant], will be considered and the decision regarding the Worker's Compensation claim made. We note for the purpose of this opinion that this is not a willful misconduct case as contemplated by § 65.1-38. The only issue presented here is whether the claimant's conduct in entering his supervisor's office on two occasions was sufficient to justify his termination. We hold that it was not. (clarification added).

A concurring opinion filed by Commissioner O'Neill equated the standard of proof of an unjustified refusal of selective employment with that of a justified dismissal:

The question before us is whether the employment termination satisfies the requirements of the Worker's Compensation law in terms of adequate cause for termination of benefits under the Act. The evidence must meet the same standard as that required by Section 65.1-63, i.e., refusal of selective employment.

■ Employer seeks to invoke the doctrine of collateral estoppel to prevent claimant from litigating the issue whether his dismissal was justified. *See generally Bates* v. *Devers*, 214 Va. 667, 671, 202 S.E.2d 917, 921 (1974). To determine whether the VEC's ruling that claimant was guilty of misconduct is binding upon the Commission, we must first determine whether that issue is the same as the issue litigated by claimant before the Commission. We hold that the issues are not identical.

■ Virginia Code § 60.1-58 provides:

An individual shall be disqualified for benefits . . . (b) . . . if the [Virginia Employment] Commission finds such individual is unemployed because he has been discharged for misconduct connected with his work. (clarification added).

In *Branch* v. *Virginia Employment Commission*, 219 Va. 609, 249 S.E.2d 180 (1978), the court defined the misconduct standard:

In our view, an employee is guilty of "misconduct connected with his work" when he *deliberately* violates a company rule reasonably designed to protect the legitimate business interests of his employer, or when his acts or omissions are of such a nature or so recurrent as to manifest a *willful* disregard of those interests and the duties and obligatrions he owes his employer. (emphasis in original).

219 Va. at 611, 249 S.E.2d at 182.

The Industrial Commission's inquiry focuses on whether the claimant's benefits may continue in light of his dismissal from selective employment. The key determination is whether the dismissal was "justified." *See Marval Poultry Co.* v. *Johnson*, 224 Va. 597, 601, 299 S.E.2d 343, 346 (1983); *Goodyear Tire & Rubber Co.* v. *Watson*, 219 Va. 830, 833, 252 S.E.2d 310, 313 (1979).

In considering the cases which come before them, the VEC and the Commission each must be mindful of the purposes and goals of the legislation which they interpret. We foresee that in many cases the same behavior constituting misconduct under Code § 60.1-58(b) will also justify dismissal from selective employment. However, we cannot say as a matter of law that the two inquiries will always yield the same result.

Therefore, the Commission correctly ruled that the VEC's finding was not binding upon it, and it was proper to consider the evidence presented to the deputy commissioner.

█ Upon appellate review, this Court will uphold findings of fact made by the Commission when supported by credible evidence:

We do not retry the facts before the Commission nor do we review the weight, preponderance of the evidence, or the credibility of witnesses. If there is evidence or reasonable inference that can be drawn from the evidence to support the Commission's findings, they will not be disturbed by this Court on appeal, even though there is evidence in the record to support contrary findings of fact.

*Caskey* v. *Dan River Mills, Inc.*, 225 Va. 405, 411, 302 S.E.2d 507, 510-11 (1983).

We find the Commission's findings of fact adequately supported by the record, and find its ultimate conclusion consistent with the intent of Virginia's worker's compensation scheme.

Accordingly, finding no error in the decision appealed from, the order of the Commission is affirmed.

*Affirmed.*

Koontz, C.J., and Keenan, J., concurred.