COURT OF APPEALS OF VIRGINIA

Present:  Judges Baker, Benton and Bray
Argued at Richmond, Virginia


KENBRIDGE CONSTRUCTION COMPANY, INC.
 AND UNITED CONTRACTORS OF VIRGINIA
 GROUP SELF-INSURANCE                          OPINION BY
                                        JUDGE JAMES W. BENTON, JR.
v.  Record No. 3101-96-2                     JUNE 24, 1997

CHARLES EDWARD POOLE


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Bradford C. Jacob (William C. Walker; Taylor &
          Walker, P.C., on briefs), for appellants.

          Brian J. Cusce for appellee.



     Kenbridge Construction Company, Inc. appeals from a ruling
of the Workers' Compensation Commission granting Charles Edward
Poole compensation for medical services provided to him by his
wife.  Kenbridge argues that the commission erred in ruling that
the services provided by Poole's wife are compensable under the
Workers' Compensation Act.  For the reasons that follow, we
affirm the commission's ruling.

                                I.

     Charles Edward Poole fractured his skull on July 20, 1994
while working for Kenbridge.  As a result, Poole suffers from
cognitive brain damage and is blind in one eye.  The commission
approved the parties' memorandum of agreement and awarded Poole
$466 per week in temporary total disability benefits for lost
wages and medical benefits for as long as necessary.

     A deputy commissioner held a hearing on Poole's claim for

payment for the services provided by Poole's wife between 10:00 p.m. and 8:00 a.m. every day.

The evidence at that hearing proved that Poole requires continuous care. Aides give Poole assistance during the day. Poole's wife is the only person who cares for Poole during the nighttime.

Dr. Nathan D. Zasler, Poole's brain rehabilitation specialist, reported that Poole's wife "has been providing and will need to continue to provide medically necessary attention in the home on a 24-hour basis due to . . . Poole's condition." He also wrote that Poole's wife provided care that "has been under [his] direction." Dr. Zasler stated that her care "involves the type of care that would be rendered by trained attendants in most other settings."

Dr. Gary R. Zeevi, Poole's cardiologist, reported that Poole's wife provides "in-home medical attention which would otherwise require in-office care." He added that she "monitor[s] his cardiac condition, heart rates[,] and reaction to medications in a fashion usually reserved for people with nursing degrees." Dr. E.D. Baugh, Poole's primary physician, reported that Poole's wife keeps a daily record of Poole's medications, blood pressure, and pulse rate. Poole's pharmacist stated that Poole's wife "has become very knowledgeable about his drugs."

Poole's wife testified that after Poole's accident, Poole's doctor told her that she "must learn how to regulate his heart--

to check his heart every morning." After she was told that she "must learn the seizure procedures," she sought and received "train[ing] . . . for [Poole's] particular needs." Specifically, Poole's wife has been trained to administer enemas and suppositories, take stool samples, take blood pressure readings, and monitor heart rates. An experienced nurse testified that she trained Poole's wife to perform most of these tasks. In addition, Poole's wife enrolled in a class to learn cardiopulmonary resuscitation techniques (CPR).

Poole's wife has performed some physical therapy for her husband. In addition, she monitors all of his medications and prepares his medication sheets. Although she remains in close contact with Poole's doctors, one doctor has told her to use her own discretion when monitoring Poole's medication. Poole's wife testified that she gets up from four to fifteen times each night to care for Poole.

In awarding payment for Poole's wife's services, the commission found the following:

> [Poole's wife] has clearly been trained to provide services which qualify as "medical attention." She has been trained in CPR, physical therapy, seizure control, the monitoring of vital functions, bowel and bladder programs, and to a limited extent, the administration of medication. . . . The necessity of her services has been certified by Drs. Zasler, Zeevi, and Baugh.

The commission ruled that Poole's wife's services should be compensated at the rate of $7 per hour, three hours per night,

seven days per week.

## II.

"When the issue is the sufficiency of the evidence and there is no conflict in the evidence, the issue is purely a question of law. . . . '[W]e must . . . determine if the correct legal conclusion has been reached.'" Cibula v. Allied Fibers & Plastics, 14 Va. App. 319, 324, 416 S.E.2d 708, 711 (1992) (citation omitted), aff'd, 245 Va. 337, 428 S.E.2d 905 (1993). The parties agree that, "after an accident, the employer shall furnish or cause to be furnished . . . necessary medical attention." Code § 65.2-603(A)(1). Kenbridge argues, however, that the facts of this case do not meet the requirements of Code § 65.2-603 as a matter of law because the services Poole's wife provides do not constitute "medical attention."

The rule is well settled that nursing services, whether provided at a medical facility or in a patient's home, "are included among the medical benefits that an employer and insurer must furnish, provided the services are necessary and authorized." Warren Trucking Co. v. Chandler, 221 Va. 1108, 1115, 277 S.E.2d 488, 492-93 (1981). In applying the rule, the following factors are relevant:

> [T]he employer must pay for the care when it is performed by a spouse, if (1) the employer knows of the employee's need for medical attention at home as a result of the industrial accident; (2) the medical attention is performed under the direction and control of a physician, that is, a physician must state home nursing care is necessary as the result of the accident and

- 4 -

must describe with a reasonable degree of particularity the nature and extent of duties to be performed by the spouse; (3) the care rendered by the spouse must be of the type usually rendered only by trained attendants and beyond the scope of normal household duties; and (4) there is a means to determine with proper certainty the reasonable value of the services performed by the spouse.

Id. at 1116, 277 S.E.2d at 493.

In Chandler, the Supreme Court held that the services provided by Chandler's wife were not of the kind normally provided by a trained medical care provider. See id. at 1118, 277 S.E.2d at 494. The evidence proved that Chandler's wife's "care consisted of bathing, shaving, feeding, assistance in walking, help with braces, aid upon falling, driving[,] and administering routine medication." Id.

The evidence in this case proved that the services provided by Poole's wife are significantly more extensive. Poole's wife is required to monitor Poole's heart rate and blood pressure, give him suppositories and enemas, monitor his medications and any side effects, and remain in close contact with his doctors. When Poole has seizures, she must determine the cause and make judgments about the appropriate emergency care. Indeed, Dr. Zasler wrote the following in his report to the commission:

This care involves medication administration and monitoring for side-effects, monitoring for seizures and providing appropriate emergency care when seizures occur, monitoring for cardiovascular problems related to . . . Poole's post-injury cardiac arrhythmia, [and] supervising and implementing appropriate bowel and bladder programs . . . .

- 5 -

Both Dr. Zasler and Dr. Zeevi opined that the care provided by Poole's wife is usually performed by trained attendants or nurses. Moreover, the evidence proved that Poole's wife has received extensive training at hospitals and from a registered nurse. She provides these services to Poole at the direction of Poole's physicians. Based on this evidence, we hold that the services provided by Poole's wife are "of the type usually rendered only by trained attendants and beyond the scope of normal household duties." Id. at 1116, 277 S.E.2d at 493. Accordingly, the commission did not err in awarding Poole benefits for the services provided by his wife.

Contrary to Poole's assertion, however, we hold that the commission did not err in awarding compensation for only three hours per night. No evidence supports a finding that Poole's wife remains awake and monitors Poole constantly from 10:00 p.m. until 8:00 a.m. Indeed, Poole's wife testified that Poole wakes her during the night. Thus, the evidence supports a finding that Poole's wife does not render services for the full ten hours per night. This evidence and the reasonable inferences that flow from the evidence support the commission's award of $7 per hour for three hours per night.

Accordingly, we affirm the award.

Affirmed.