COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Annunziata and Bumgardner
Argued at Alexandria, Virginia


SHIRLEY CONTRACTING CORPORATION
                                  MEMORANDUM OPINION[*] BY
v.    Record No. 1545-97-4      JUDGE ROSEMARIE ANNUNZIATA
                                      FEBRUARY 24, 1998
GARLAND DUNKLEY


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION
                John H. Carstens (Jordan, Coyne & Savits, on
                briefs), for appellant.

                Charles W. O'Donnell (Charles W. O'Donnell,
                P.C., on brief), for appellee.


     Shirley Contracting Corporation (employer) appeals the

decision of the Workers' Compensation Commission denying its

applications to terminate the benefits of Garland Dunkley

(claimant).  Employer contends that claimant was released to

work, but unjustifiably refused selective employment by violating

employer's substance abuse policy.  It also contends that the

commission erroneously found that claimant was totally disabled.

 Finding no error, we affirm.

     On January 13, 1996, claimant was injured in an accident

when he was thrown against the windshield of a front-end loader

he was operating.  Claimant was diagnosed with cervical and

trapezius strain affecting his neck.  Employer accepted

claimant's injury as compensable.

---

[*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

On January 29, 1996, Dr. Samir Azer examined claimant and diagnosed him with cervical strain with underlying cervical spondylosis; both conditions related to claimant's neck. On April 26, Dr. Azer wrote a certificate of disability which stated that claimant could return to light duty work as of April 15, with no pushing, no pulling, no lifting, and no lifting over 15 pounds overhead. However, the employer did not offer claimant light duty employment because claimant's employment had been terminated effective February 6, 1996 after a urine sample collected from him on January 22, 1996 tested positive for cannabinoids.

On May 13, claimant reported his leg pain to Dr. Azer. Because claimant had not previously complained of leg pain, Dr. Azer decided to "leave that up to his treating physician to take care of." Dr. Azer stated that, "As far as his cervical spine is concerned, I believe the patient is allowed to go regular duty as of a week from today," and signed a certificate of disability which stated that claimant could return to work on May 20, 1996.

On May 21, however, Dr. Mirza S. Baig, another health care provider to whom claimant was referred, diagnosed claimant with, inter alia, cervical and lumbar radiculopathy and lumbosacral strain. On May 28, 1996, this physician noted that claimant continued to complain of pain in the lower extremities and advised claimant to see Dr. James Preuss for a second opinion. On May 31, 1996, Dr. Preuss stated that claimant had cervical

2

spine strain, cervical spondylosis, and discogenic disease. Dr. Preuss stated that although he would like more information, he "would not be anxious to proceed with any cervical spine surgery." On June 5, 1996, Dr. Mirza Baig stated that claimant was unable to work effective May 22, 1996.

Employer filed two applications in this case. In the first, employer sought to terminate claimant's benefits on the basis of "claimant's refusal of selective employment"; employer contended claimant's violation of the employer's drug policy and the resultant termination of his employment constituted a refusal of selective employment after claimant was released to light duty work. Employer's second application sought to terminate claimant's benefits on the basis that he had been released to regular duty on May 20, 1996.

The deputy commissioner found that claimant violated employer's drug policy, that claimant was not totally disabled and had been released to light duty on April 22, 1996 and that claimant's violation of the drug policy constituted an unjustified refusal of selective employment. The deputy commissioner also found that Dr. Azer's release to regular work on May 13, 1996 was anticipatory and did not address claimant's problem in his right leg.

After both employer and claimant requested review, the full commission entered an opinion on May 28, 1997. The commission stated:

> We find that the claimant was not released to

3

> light duty employment.  Dr. Azer's release is
> limited and prospective.  The Commission does
> not credit prospective releases.  Counterman
> v. Providence Electric Corp., 71 O.W.C. 82
> (1992).  We find Dr. Baig's opinion
> persuasive that the claimant has been totally
> disabled commencing May 22, 1996.

Commissioner Joyner filed a concurring opinion stating that there was no evidence that claimant violated employer's drug policy.

Employer contends that claimant unjustifiably refused selective employment after being released to light duty because he was fired for cause after testing positive for drugs in violation of its drug policy.  See Chesapeake & Potomac Telephone Co. v. Murphy, 12 Va. App. 633, 639-40, 406 S.E.2d 190, 193, aff'd, 13 Va. App. 304, 411 S.E.2d 444 (1991) (en banc) ("[W]here a disabled employee is terminated for cause from selective employment procured or offered by his employer, any subsequent wage loss is properly attributable to his wrongful act rather than his disability.").  Ken Jenkins, Claims Specialist, testified on behalf of employer that he identified a light-duty position for claimant on January 22, 1996, which was available when claimant was released for light-duty work, but which was not offered to claimant because he had violated the drug policy.

Specifically, employer argues that the record fails to support the commission's finding that claimant was not released to light duty by Azer and that, consequently, claimant unjustifiably refused selective employment, precluding an award of benefits.  We do not reach the question of the validity of Dr.

4

Azer's release to light duty because we find as a matter of law that the evidence was insufficient to support employer's claim that claimant violated its drug policy, the factual predicate for employer's contention that claimant unjustifiably refused selective employment. See Kenbridge Constr. Co. v. Poole, 25 Va. App. 115, 118, 486 S.E.2d 567, 569 (1997) (citing Cibula v. Allied Fibers & Plastics, 14 Va. App. 319, 324, 416 S.E.2d 708, 711 (1992)) (explaining that where there is no conflict in the evidence, the sufficiency of the evidence is a question of law).

"Where passing drug and alcohol screening is made a clear and unequivocal condition of employment, . . . failure to pass the screening is tantamount to misconduct under Murphy[, 12 Va. App. at 639-40, 406 S.E.2d at 193,] for which an employee can be terminated." Richfood, Inc. v. Williams, 20 Va. App. 404, 410, 457 S.E.2d 417, 420 (1995). At the hearing on employer's applications before the deputy commissioner, employer introduced two versions of employer's drug policy, one of which was no longer in effect and not currently enforced. Employer's drug policy in effect since 1995 reads in relevant part:

> The possession, transfer, manufacture, distribution, dispensation, sale or use of drugs and/or alcoholic beverages on Company property or jobsites is not tolerated by the Company and is inconsistent with its goal of operating in a safe and productive manner. Accordingly, no employee, subcontractor or visitor shall use or have in his or her possession such contraband on Company property or jobsites. Additionally, no Company employee shall report to work under the influence of alcohol or drugs or having an illegal or unauthorized drug present in

5

the body.  Any employee violating this policy will be subject to disciplinary actions.  In order to enforce this policy, the Company reserves the right to request persons subject to the policy to take fitness for duty tests.  Confirmed positive results from a fitness for duty test shall be grounds for disciplinary action.

Laura Jargo, employer's Director of Human Resources, admitted on cross-examination that claimant did not violate the previous drug policy, and could not state how claimant violated the current policy.  Employer's attorney agreed that claimant did not report to work on January 22, 1996, the date the urine sample was collected.  Jargo testified that she could not say that claimant had possessed, transferred, manufactured, or distributed drugs on employer's property as prohibited by the drug policy.  In addition, the uncontroverted evidence established that while claimant gave a positive sample on January 22, 1996, he had not worked after January 14, 1996.  Thus, employer presented no evidence that claimant possessed drugs "on Company property or jobsites" or reported to work under the influence of drugs or with drugs present in his body.  We find, therefore, that claimant did not violate employer's drug policy, and did not unjustifiably refuse selective employment.

In addressing employer's second application to terminate claimant's benefits on the ground that he was released to regular duty, the commission found that claimant was totally disabled as of May 22, 1996.  Employer claims that the commission's finding is not supported by credible evidence.  We find this contention

6

to be without merit.  We will reverse the commission's finding of total disability only if it is unsupported by the evidence. <u>Daniel Constr. Co. v. Tolley</u>, 24 Va. App. 70, 76-77, 480 S.E.2d 145, 148 (1997).

Employer acknowledges that Dr. Mirza Baig certified that claimant was totally disabled on May 22, 1996.  Nevertheless, employer argues that the commission's decision was based on the erroneous belief that Dr. Baig recommended neck fusion surgery. Employer also argues that Dr. Baig's opinion was, in turn, not reliable.

We agree that the commission erroneously noted in its summary of the facts that Dr. Baig recommended neck surgery.  The record does not support employer's contention, however, that this misstatement of the facts formed the basis of the commission's decision.  Dr. Baig certified that claimant was totally disabled after she examined claimant herself and diagnosed claimant as having, <u>inter</u> <u>alia</u>, cervical radiculopathy.  Dr. Preuss' findings of degenerative changes in the cervical spine and other cervical problems support Dr. Baig's diagnosis.  On the basis of her diagnosis of cervical radiculopathy, Dr. Baig determined that claimant was totally disabled.  Although Dr. Azer issued a contrary opinion, we do not "make [our] own determination of the credibility of witnesses" in assessing the evidence before the commission.  <u>Wagner Enters., Inc. v. Brooks</u>, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991) (citing <u>Jules Hairstylists, Inc. v.</u>

7

<u>Galanes</u>, 1 Va. App. 64, 69, 334 S.E.2d 592, 595 (1985)).  We find that Dr. Baig's certification that claimant was totally disabled as of May 22, 1996, constitutes credible evidence to support the commission's opinion.

<u>Affirmed.</u>