COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Agee and Senior Judge Hodges
Argued at Chesapeake, Virginia


TRANSPORTATION SAFETY CONTRACTING
 AND ST. PAUL FIRE & MARINE
 INSURANCE COMPANY
                                    MEMORANDUM OPINION[*] BY
v.    Record No. 1713-00-1          JUDGE JAMES W. BENTON, JR.
                                          MAY 22, 2001
ROBERT A. MARTIN, SR.


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

        R. Ferrell Newman (Thompson, Smithers,
        Newman, Wade & Childress, on brief), for
        appellants.

        John H. Klein (Montagna, Klein & Camden,
        L.L.P., on brief), for appellee.


    Transportation Safety Contracting contends that the Workers'

Compensation Commission erred (1) in reinstating the disability

benefits of Robert A. Martin, Sr., after Transportation Safety

terminated his selective employment and (2) by declining to

apply Code § 65.2-510(B) to bar Martin's compensation benefits

based upon his wages at his new employment.  We affirm the

commission's award.

                             I.

    Viewed in the light most favorable to Martin, who prevailed

before the commission, see Allen & Rocks, Inc. v. Briggs, 28 Va.

---

    * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

App. 662, 672, 508 S.E.2d 335, 340 (1998), the evidence proved that Martin injured his head and back while employed as an electrical foreman for Transportation Safety. Prior to his injury by accident, Martin was a commendable employee. The record establishes that Martin had received substantial financial bonuses and was knowledgeable about Transportation Safety's business. Based on a memorandum of agreement, the commission entered an award granting Martin temporary total disability benefits.

Martin testified that while he was healing from his injury he had to visit Transportation Safety on several occasions because "they were not paying the [medical] bills on time and [he] was receiving notice that [his] credit was going to be damaged." Martin also testified that during these visits several employees informed him that the division manager said he "had been drinking and drugging" the day of his injury. The evidence proved, however, that another employee's negligence caused Martin's injury. Martin testified that Transportation Safety had not given its employees safety manuals and that the failure to have them created unsafe conditions.

When Martin was released to return to work in light duty, Transportation Safety offered him an office position, where he was able to use his computer skills. Martin testified that he used his personal funds and Transportation Safety's computers to establish an internet presence to facilitate Transportation

Safety's business efficiency.  Martin also testified that after he began his selective employment several employees again told him that the division manager had suggested that Martin had sustained his injury because he had been under the influence of drugs or alcohol.  When Martin went to the division manager to complain about those statements, the division manager blamed other employees for spreading rumors.  During that discussion, Martin also talked with the division manager about the lack of safety manuals on the day of his accident.  Martin testified that he did so because after he returned to work he learned from the office manager that "she had to call the home office . . . and request a copy" of the safety manual.

The office manager testified that after Martin returned to work in his light duty employment he began "badmouthing the employees," including the employee whose negligence led to Martin's injury.  She heard Martin say that the employees were incompetent and that "he'd trusted a fellow employee and he would never do that again."  She reported Martin's complaints to the division manager.  That same day, the division manager met with Martin in her presence to discuss "what the problem was; why was [Martin] unhappy; why was he saying all these things."  During that meeting, the division manager acknowledged that he had made inquiries of the employees about whether Martin had used drugs.  The office manager said Martin "took offense to

-

that." She testified that when the division manager asked what he could do to remedy the situation, Martin said, "fire me."

The division manager testified that when Martin returned from his injury, Martin complained about the lack of safety manuals. The division manager testified, however, that a safety manual was in the office file and on the table but said Martin "may not have been aware of it." The division manager also testified that he met with Martin and the office manager after she reported that Martin was unhappy. During that meeting, the division manager denied that he had accused Martin of drug use. He admitted, however, that he had investigated such a rumor and that the investigation had ended when he "found out that no one knew anything about it." The division manager testified that Martin became angry about these allegations. When he asked Martin what he could do to remedy the situation, Martin said, "fire me." The division manager ended the meeting but later met with Martin and terminated his employment. The division manager testified that he believed this was a "mutually acceptable parting of the ways."

Martin testified that during the meeting, he told the division manager he believed the rumors of drug use slandered him. He said he objected to the manner in which the inquiries were made. Martin testified that the division manager became "very defensive about that and several times . . . [said] not only that he did not have to let [Martin] come back to work, but

-

that he could always fire [Martin]."  Martin testified that

"after growing weary of [the discussion, he] said, go ahead if

that's what you feel necessary to do."  The division manager

left the meeting and later terminated him, saying Martin "just

could not give 100 percent anymore."

## II.

In pertinent part, Code § 65.2-510(A) provides that "[i]f

an injured employee refuses employment procured for him suitable

to his capacity, he shall only be entitled to the benefits

provided for in [Code] §§ 65.2-503 and 65.2-603 . . . during the

continuance of such refusal, unless in the opinion of the

Commission such refusal was justified."  Applying the

predecessor statute, we held in Chesapeake & Potomac Telephone

Co. v. Murphy, 12 Va. App. 633, 406 S.E.2d 190, aff'd on reh'g,

13 Va. App. 304, 411 S.E.2d 444 (1991), that an employee who is

terminated for justifiable cause from selective employment that

is procured by the employer forfeits the right to cure this

termination by obtaining other employment.  12 Va. App. at

639-40, 406 S.E.2d at 193.  Later, we further explained the rule

as follows:

> When a disabled employee is discharged
> from selective employment, the "inquiry
> focuses on whether the claimant's benefits
> may continue in light of [the] dismissal."
> An employee's workers' compensation benefits
> will be permanently forfeited only when the
> employee's dismissal is "justified," the
> same as any other employee who forfeits

-

> . . . benefits when discharged for a "justified" reason.
>
> A "justified" discharge (one which warrants forever barring reinstatement of workers' compensation benefits) does not simply mean that the employer can identify or assign a reason attributable to the employee as the cause for his or her being discharged. Whether the reason for the discharge is for "cause" or is "justified" for purposes of forfeiting benefits must be determined in the context of the purpose of the Act and whether the conduct is of such a nature that it warrants a permanent forfeiture of those rights and benefits.

Eppling v. Schultz Dining Programs, 18 Va. App. 125, 128, 442 S.E.2d 219, 221 (1994) (citations omitted).

Applying the well established standard of review, we are required to uphold the commission's factual findings when they are supported by credible evidence. Code § 65.2-706; James v. Capitol Steel Constr. Co., 8 Va. App. 512, 515, 382 S.E.2d 487, 488 (1989). Furthermore, any reasonable inferences the commission draws from credible evidence "will not be disturbed by this Court on appeal." Hawks v. Henrico County Sch. Bd., 7 Va. App. 398, 404, 374 S.E.2d 695, 698 (1988). The commission accepted Martin's testimony and found as follows:

> The claimant's negative attitude that developed after his return to work was, in part, related to the work injury. His initial job enthusiasm upon returning to selective work evolved into a poor attitude after the claimant learned of his supervisor's comments that drugs or alcohol had contributed to the work injury and that the company had failed to order safety manuals after the accident. The claimant's

-

> termination for having a poor attitude did not rise to the level of justified cause.
>
> Further, we find that the claimant did not unjustifiably refuse selective employment on May 12, 1999. It appears that the employer withdrew its offer of selective employment upon a determination that the claimant's attitude was incompatible with the business rules. The record does not establish that the claimant attempted to sabotage selective employment procured by the pre-injury employer through communicating his poor attitude. We note again no evidence of deterioration in the claimant's work performance during this period.

Martin's testimony, which the commission found to be credible, supports these findings. He testified that his dissatisfaction arose from several events related to his job related injury. Initially, he expressed his concern about Transportation Safety's delay in paying his medical expenses, which he believed threatened his credit standing. Martin also voiced his concern about the division manager's inquiry concerning allegations of Martin's possible drug and alcohol use. The inquiry showed the allegation had no basis, but the investigation caused Martin distress because his toxicology reports established no drugs or alcohol in his system and the accident was established to have been caused by the negligence of another employee.

In addition, Martin testified that no safety manuals had been given to employees prior to his injury and that the absence of manuals contributed to his injury. Although the division

-

manager testified that there was a manual in his file and on a desk outside his office, he acknowledged that Martin, who was a foreman, may not have been made aware of those manuals. Martin testified, however, that the office manager told him that she had only requested safety manuals after his injury. He further testified that "still, to this day; [he has] . . . never seen a [safety] manual with Transportation Safety."

In Richmond Cold Storage Co. v. Burton, 1 Va. App. 106, 335 S.E.2d 847 (1985), we upheld the commission's ruling that an employer's discharge of an employee "for misconduct does not bind the Commission in its inquiry whether [the employee] is precluded from claiming benefits due to a justified dismissal." Id. at 109, 335 S.E.2d at 849. Later, in Eppling, we ruled that not every discharge, even if supported by a reason, is a "justified" discharge. 18 Va. App. at 128, 442 S.E.2d at 221. The commission is required "to consider the nature of [the] conduct," which is alleged to constitute the cause or to justify the dismissal. Id. at 129, 442 S.E.2d at 221. Thus, we held that even if the employer can assign a reason for discharge, not every "type of willful conduct or misbehavior [arises to the level] that, upon termination, justifies a forfeiture of workers' compensation benefits [under Murphy]." 18 Va. App. at 130, 442 S.E.2d at 222.

Although the office manager testified in this case that Martin made derogatory comments to her and was heard to have

-

made such comments to other employees concerning the staff and the safety policies, the record indicates that neither the office manager nor the division manager put any written warnings or adverse comments in Martin's personnel file. The record also indicates that Martin's comments primarily concerned the employees involved in the incident of his injury.

Credible evidence also supports the commission's finding that Martin's "negative attitude [arose] after [he] learned of [the division manager's] comments that drugs or alcohol had contributed to the work injury and that [Transportation Safety] had failed to order safety manuals." Further, the record contains credible evidence to support the commission's finding that these issues are related to Martin's perceptions that his accident was avoidable and that he was the subject of an unjustifiable investigation into his character following an accident that was caused by another employee's negligence.

Furthermore, Martin's behavior does not resemble the behavior of the employees in Marval Poultry Co. v. Johnson, 224 Va. 597, 299 S.E.2d 343 (1983), or Goodyear Tire & Rubber Co. v. Watson, 219 Va. 830, 252 S.E.2d 310 (1979). We used those cases in Eppling to illustrate what constitutes justification for terminating an employee on selective work status. In Marval Poultry, the Supreme Court determined that an employer was justified in dismissing an employee for his dishonesty. 224 Va. at 601, 299 S.E.2d at 346. In Goodyear, the Court held that an

-

employer was justified in dismissing an employee for poor work and excessive absenteeism.  219 Va. at 833, 252 S.E.2d at 313. In this case, the evidence demonstrated that Martin was a productive employee with no problems with truthfulness or misconduct.

As the commission properly ruled, Code § 65.2-510(B) is only applicable in cases where the employee unjustifiably refuses selective employment.  The division manager's termination of Martin was a withdrawal of its selective employment upon his belief that Martin's attitude was not compatible with continued employment.  We hold that the evidence supports the commission's ruling that this reason does not disqualify Martin for a continuation of benefits.  Because we affirm the commission's ruling that Martin did not unjustifiably refuse employment, Transportation Safety's second issue is moot.

For these reasons, we affirm the commission's award.

Affirmed.
