COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Petty and Huff
Argued by videoconference

UNPUBLISHED

CUMBERLAND HOSPITAL AND
  ACE AMERICAN INSURANCE COMPANY

                                              MEMORANDUM OPINION[*] BY
v.      Record No. 0682-20-4                  JUDGE ROBERT J. HUMPHREYS
                                              DECEMBER 8, 2020

ANGELA ROSS


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Joseph F. Giordano (Matthew J. Sheptuck; Semmes, Bowen &
            Semmes, on briefs), for appellant

            Michael J. Beste (Stephen T. Harper; Reinhardt Harper Davis, PLC,
            on brief), for appellee.


        Upon remand from this Court, on April 22, 2020, the Workers' Compensation

Commission ("the Commission") found that Angela Ross ("Ross") was properly awarded

medical benefits pursuant to Code § 65.2-603, including around-the-clock home health care to be

provided by her husband, Kevin Ross ("Kevin"), at the rate of nine dollars per hour.  On appeal,

Ross's employer, Cumberland Hospital, and Ace American Insurance Company (collectively

"Cumberland"), assign error to the Commission's determination that Cumberland provided

inadequate treatment to Ross.  Cumberland also argues the Commission erred in holding that

Ross satisfied the four-part test established in Warren Trucking Co. v. Chandler, 221 Va. 1108,

1116 (1981).

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND

In 2012, Ross suffered severe facial, head, and brain trauma injuries from an attack by a patient while working as a registered nurse for Cumberland. Ross was diagnosed with thirteen different conditions as a result of her workplace injury, including a traumatic brain injury, seizure disorder, cognitive communication disorder, and dysexecutive (frontal lobe) disorder. Ross's injuries left her with such significant cognitive dysfunction, paranoia, and memory impairment that she needs constant supervision and safety monitoring and cannot be left alone. Ross requires approximately eleven prescription medications daily and cannot remember to administer them herself. The Commission awarded her, *inter alia*, lifetime medical benefits.

In 2016, Ross's treating physician, Dr. Gregory O'Shanick ("Dr. O'Shanick"), and his associate, Madison Moore ("Moore"), a physician-assistant, recommended a life coach or home health aide to assist Ross and monitor her safety. Initially, Ross was only prescribed home health care for eight-to-twelve hours a day, three-to-four days a week. Cumberland first provided home health care to Ross through Right at Home, an agency that offers in-home care for elderly and disabled adults. Right at Home supplied four consecutive aides to Ross, beginning in September 2016 and terminating in October 2017. On August 25, 2017, Dr. O'Shanick and Moore stated that it was medically necessary for Ross to be provided with "a home health aide or family member oversight to help assist her with activities of daily living and to monitor safety concerns" twenty-four hours a day, seven days a week.[1]

Since her traumatic brain injury, Ross suffers from extreme paranoia and suspicion. She has difficulty trusting people outside of her family. Ross believed that Right at Home's aides stole jewelry, attended to personal business while caring for her, and flirted with her husband.

---

[1] Cumberland does not contest that Ross needs constant home health care because of the brain injuries she suffered at work.

At the evidentiary hearing, Kevin testified that his wife reported to him that the aides "crossed beyond professional boundaries." Ross's longest-serving aide from Right at Home, Shamonica Johnson ("Johnson"), testified that she took Ross along to her child's school and left Ross unattended at Johnson's home.

On September 19, 2017, Ross filed a claim for home health care to be directly provided by her husband, Kevin, pursuant to Code § 65.2-603. On October 16, 2017, in response to a questionnaire, Dr. O'Shanick again indicated that Ross needed around-the-clock home health care and agreed that it was the type of care "normally performed by a nurse and[/]or medical attendants." During the fall of 2017, Right at Home hired Kevin as Ross's home health aide but fired him after three weeks because he did not provide timely care notes as required by the employment agreement.

Moore evaluated Ross on November 16, 2017, and recorded "caregiving difficulties" in her accompanying medical notes. At that visit, Moore noted that firing Ross's caregivers from Right at Home had created an emotional toll on Ross, and they discussed getting Kevin verified as her home health aide after "four adverse events of working through the home health agency."

On February 27, 2018, Moore stated that Ross's experience with Right at Home was "detrimental to her health and recovery in that it increased her anxiety and depression. Having her husband as her primary caregiver would greatly decrease the chance of that occurring in the future." In the same letter, Dr. O'Shanick and Moore jointly stated that, in their opinion, "Mrs. Ross'[s] husband, a registered nurse, is the best professional to provide care for Mrs. Ross. . . . [H]is [medical] knowledge far exceeds the expertise of the prior professionals sent to the home."

On January 24, 2019, the Commission awarded Ross twenty-four-hour home health care, seven days a week, to be provided by her husband, Kevin. The Commission also held that

Cumberland owed Kevin nine dollars per hour for his services, beginning February 27, 2018, and continuing for as long as necessary.

Cumberland appealed to this Court, arguing that the Commission erred by failing to apply the four-part test from Warren Trucking Co. v. Chandler, 221 Va. at 1116, before awarding compensation for home health care administered by Ross's spouse. On October 22, 2019, this Court agreed that the Commission erred and remanded for application of Chandler. On April 22, 2020, the Commission held that Ross satisfied the Chandler test and that Cumberland was required to pay Kevin for continuous home health care services. This appeal follows.

## II. ANALYSIS

### A. Standard of Review

On appeal, this Court views the evidence in the light most favorable to the party that prevailed before the Commission. Allen & Rocks, Inc. v. Briggs, 28 Va. App. 662, 672 (1998). The Commission's findings of fact are binding on appeal. See VFP, Inc. v. Shepherd, 39 Va. App. 289, 292 (2002). So long as they are supported by credible evidence, the Commission's findings of facts will not be disturbed by this Court. Manassas Ice & Fuel Co. v. Farrar, 13 Va. App. 227, 229 (1991). This principle applies even if evidence exists in the record that could support contrary findings. See Jeffreys v. Uninsured Emp. Fund, 297 Va. 82, 87 (2019) (quoting Caskey v. Dan River Mills, Inc., 225 Va. 405, 411 (1983)).

### B. Inadequate Treatment

This Court first heard this case in Cumberland Hospital v. Ross, 70 Va. App. 761, 772 n.3 (2019) (alteration in original) (citation omitted), and stated that, "If the Commission on remand 'determine[s] that the treatment provided by the employer was inadequate treatment for the employee's condition and the unauthorized treatment received by the claimant was medically reasonable and necessary treatment, employer should be responsible for the treatment.'"

- 4 -

Because Ross was prescribed continuous home health care by her treating physician, Dr. O'Shanick, and his associate, Moore, Cumberland was obligated to provide her with home health services. The Commission found that Cumberland supplied home health care to Ross through Right at Home until October 2017. However, the Commission also found that the treatment through Right at Home "aggravated the claimant's anxiety and depression." Additionally, it found that Cumberland did not offer alternate care after Right at Home stopped providing services, despite Dr. O'Shanick and Moore's continuing recommendations.

The Commission's findings are supported by evidence in the record. Specifically, Moore's February 27, 2018 letter stated, "Mrs. Ross'[s] experience with the home health agency was detrimental to her health and recovery in that it increased her anxiety and depression." There is conflicting evidence regarding whether Cumberland offered other home health aides to Ross after Right at Home ceased providing care. We view the evidence in the light most favorable to Ross as the prevailing party before the Commission. See VFP, Inc., 39 Va. App. at 292.

When the evidence is sufficiently credible to support the Commission's decision, as it is here, the Commission's findings are binding on this Court. See Manassas Ice & Fuel Co., 13 Va. App. at 229. Accordingly, the Commission did not err in determining that Cumberland provided inadequate treatment to Ross after October 2017.[2]

---

[2] Cumberland erroneously argues that the Commission had no basis to determine the adequacy of Ross's treatment because that specific factual finding was not appealed from the deputy commissioner's opinion. Additionally, Cumberland relies on the fact that the October 22, 2019 remand order from this Court only instructed the Commission to apply the Chandler test. Our case law is well-established; the Commission has the authority to determine matters to which no exception was taken from the deputy commissioner's opinion. See Brushy Ridge Coal Co. v. Blevins, 6 Va. App. 73, 78 (1988). Because the Commission retains the power to determine all issues in a case upon review, regardless of whether the issues were appealed or not, it did not err.

C.  Compensable Home Health Care Provided By Ross's Spouse

After a work-related injury, an employer must furnish an injured employee with a physician and "other necessary medical attention" for "as long as necessary after [the] accident." Code § 65.2-603.  "Whether disputed medical treatment is compensable as 'other necessary medical attention' within the definition of Code § 65.2-603 presents a mixed question of law and fact, which this Court reviews *de novo*." Cumberland Hosp., 70 Va. App. at 766 (quoting Haftsavar v. All Am. Carpet & Rugs, Inc., 59 Va. App. 593, 599 (2012)).  The Virginia Workers' Compensation Act requires employers to furnish a physician and "other necessary medical attention" to an injured employee.  Code § 65.2-603.  "[O]ther necessary medical attention" may encompass nursing care that is given at home to a disabled employee by her spouse. Low Splint Coal Co. v. Bolling, 224 Va. 400, 404 (1982).

When an employee believes that the home health care provided by his or her employer is inadequate and requests that the employer instead pay the employee's spouse to administer in-home care, "the four requirements established by the Supreme Court in Chandler must be applied to determine if the care provided by claimant's spouse is *necessary medical attention*." Cumberland Hosp., 70 Va. App. at 767 (emphasis added).  Nursing care administered to a disabled employee at home, by his or her spouse, is allowable as "other necessary medical attention," if the care meets meet a four-part standard. Chandler, 221 Va. at 1116 (quoting Code § 65.1-88 (current version at Code § 65.2-603)).

> [T]he employer must pay for the care when it is performed by a spouse, if (1) the employer knows of the employee's need for medical attention at home as a result of the industrial accident; (2) the medical attention is performed under the direction and control of a physician, that is, a physician must state home nursing care is necessary as the result of the accident and must describe with a reasonable degree of particularity the nature and extent of duties to be performed by the spouse; (3) the care rendered by the spouse must be of the type usually rendered only by trained attendants and beyond the scope of normal household duties; and

> (4) there is a means to determine with proper certainty the
> reasonable value of the services performed by the spouse.

Id.

Cumberland argues that the Commission erred in holding that the care given by Kevin met the third prong of the test, that the care he administers is of the type usually rendered only by trained attendants, and that his care extended beyond the scope of normal household duties.

The Supreme Court has defined "other necessary medical attention" as "observant care." Low Splint Coal Co., 224 Va. at 404.

> To furnish care is to "provide for or attend to needs or perform
> necessary personal services (as for a patient or child)." . . .
> "[S]ervice" has been defined as "useful labor that does not produce
> a tangible commodity . . . (physicians perform services although
> they produce no goods)."

Id. at 404-05.

In Chandler, the Supreme Court held that the care rendered by the injured employee's spouse did not exceed the scope of normal household duties. 221 Va. at 1118. The employee, Chandler, suffered work-related injuries to his head and neck. Id. at 1109. His wife's care consisted of bathing, shaving, feeding, and assisting him in walking, helping with his braces, aiding him upon falling, driving him, and administering his routine medication. Id. at 1118. Moreover, unlike this case, Chandler's four physicians all separately opined that he did not require continuous care from home attendants. Id. at 1111. The Court thus held that his care was not of the variety usually rendered only by trained attendants. Id. at 1118.

Alternately, in Kenbridge Constr. Co. v. Poole, 25 Va. App. 115, 120 (1997), this Court found that home care services provided by the disabled employee's wife did meet the third prong of the Chandler test. In that case, Poole sustained cognitive brain damage and partial blindness and required continuous care. Id. at 116. He suffered from seizures and required "appropriate emergency care" when they occurred. Id. at 120. Poole's wife provided home health services,

which included monitoring his heart rate and blood pressure, giving him suppositories and enemas, monitoring his medications and side effects, and remaining in close contact with his doctors. Id. Poole's physicians opined that the care administered by his wife was of the kind usually performed by trained attendants. Id. His wife received training from both a hospital and a registered nurse in order to provide the services her husband required at home, which the Court found were beyond the scope of household duties. Id.

To meet the third requirement of the Chandler test, the care rendered by the employee's spouse must be, first, of the type "usually rendered only by trained attendants." 221 Va. at 1116. This determination is a factual question best left to the expertise of the Commission, as long as evidence in the record supports it. See Manassas Ice & Fuel Co., 13 Va. App. at 229.

Unlike the physicians in Chandler, on October 16, 2017, Dr. O'Shanick explicitly stated that Ross needed twenty-four-hour, seven-days-a-week home health care. Like the physicians in Kenbridge Const. Co., when asked if the home health care administered by Kevin was "the type of care normally performed by nurses and/or trained medical attendants," Dr. O'Shanick answered "Yes." Kevin is a registered nurse and has experience working with patients who sustain brain injuries. The Commission found that because of his training as a registered nurse and experience, Kevin is particularly equipped to administer the type of home health care Ross needs. In fact, while working as Ross's home health aide, Johnson would call Ross's family for advice or instruction if Ross had a seizure during her shift.[3]

Additionally, there is ample evidence in the record that Dr. O'Shanick and Moore consistently stated since 2016 that Ross required home health care and that her husband had the appropriate training and expertise and was the best person to provide the proper care.

_____

[3] It is unclear from the record which family member Johnson called.

Dr. O'Shanick agreed that monitoring Ross for her health and safety was the type of care normally performed by a nurse or a medical attendant. Further, the Commission found that "no medical evidence in the record contradicts [Dr. O'Shanick's] medical opinion."

Cumberland argues that Ross is barred from recovery under Chandler because the health care she requires at home does not rise to the level of skilled medical care. However, nowhere in Chandler did the Virginia Supreme Court interpret "other necessary medical care" under Code § 65.1-88 as synonymous with "skilled medical care." 221 Va. at 1116 (current version at Code § 65.2-603). Instead, Chandler only requires that spousal home health care be of the type "usually rendered only by trained attendants." Id. Cumberland erroneously conflates "of the kind usually rendered only by trained attendants" with "skilled medical care." See id. While the standard of care usually administered by trained attendants is something beyond the ordinary duties of a domestic partnership, a plain reading of Chandler simply cannot be construed as requiring home health care administered by an employee's spouse to rise to the level of skilled medical care. Id.

The Chandler test also requires that home health care administered by a spouse go "beyond the scope of normal household duties." Id. Under Code § 65.2-603, "attention" means "observant care" and "to furnish care" is to "provide for or attend to needs *or perform necessary personal services (as for a patient* or a child)." Low Splint Coal. Co., 224 Va. at 404-05 (emphasis added). Ross requires full-time monitoring for her medical safety. It is not typical or normal for one spouse to be responsible for administering attentive, round-the-clock-care to the other. Providing twenty-four-hour care, three hundred and sixty-five days a year to someone who cannot be left alone for her own safety, is starkly different from driving one's spouse to doctors' appointments or occasionally aiding their mobility. Normal "household duties" do not require a spouse to quit his job to provide unremitting safety monitoring. Here, Kevin, a registered nurse with experience treating patients suffering from mental and physical disorders similar to those of his wife, is

performing exactly the same necessary personal services that were provided through Right at Home health aides by constantly monitoring Ross's safety, administering her medications, and managing her depression, anxiety, and cognitive dysfunction.

The Commission was unconvinced that "any of the caretakers acted in an unprofessional manner or that their actions in any way caused harm to the claimant or were of a magnitude to justify the cessation of the relationship with Right at Home by [Kevin] Ross or the claimant." However, the Commission found that Moore explicitly stated Ross's recovery was hampered by her experience with Right at Home attendants and that in both Moore and Dr. O'Shanick's professional opinions, Kevin was the best caregiver for his wife.

Like the claimant in Kenbridge Const. Co., Ross has a seizure disorder. Due to her traumatic brain injury, she suffers from, *inter alia*, paranoia, anxiety, depression, and memory loss. She requires approximately eleven prescription medications per day that vary in frequency and dosage. Ross's post-traumatic brain injury symptoms grew worse under Right at Home's care. As evidenced by the multiple personal care attendants supplied by Right at Home as well as Dr. O'Shanick and Moore's notes, being serviced by a home health care aide who is not her spouse risks adverse effects on Ross's health. Because Kevin is a registered nurse and given the extent of his wife's disabilities, the type of care he administers to Ross cannot fairly be characterized as merely "normal household duties."

Accordingly, we find that the Commission did not err in its judgment concluding that the care administered by Kevin is compensable as "other necessary medical attention" under Code § 65.2-603. The Commission likewise did not err in determining that the care rendered by Kevin meets the third prong of the Chandler, test and the judgment of the Commission is affirmed.

Affirmed.